**MARSHALL CO., Inc., Hoyt, Shepston & Sciaroni, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**C.D. 4148;  Protest No. 69/15149–126309.**

United States Customs Court,
Second Division.

Dec. 18, 1970.

Glad & Tuttle, San Francisco, Cal. (George R. Tuttle and Hudson F. Edwards, San Francisco, Cal., of counsel), for plaintiffs.

Carl Eardley, Acting Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial attorney), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

RAO, Chief Judge:

The merchandise involved in this case, imported from West Germany, is described on the invoice as rubber sheeting insulating material. It was assessed with duty at 25 cents per pound and 30 per centum ad valorem under item 359.-50, Tariff Schedules of the United States, as textile fabrics, not specially provided for, of man-made fibers. It is claimed that the merchandise is excluded from that classification by virtue of headnote 5 to schedule 3 of said tariff schedules, as amended by the Tariff Schedules Technical Amendments Act of 1965, and is properly classifiable at 12.5 per centum ad valorem under item 771.-42, as amended, as flexible strips or sheets, almost wholly of rubber. Other claims are deemed abandoned and will be dismissed.

The pertinent provisions of the tariff schedules, as amended, are as follows:

*Schedule 3 headnotes:*

\* \* \* \* \* \*

2. For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

\* \* \* \* \* \*

(vi) except as provided by headnote 5, articles produced from any of the foregoing products;

\* \* \* \* \* \*

5. For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

Schedule 3, Part 4, Subpart C:

*Subpart C headnotes:*

1. The provisions of this subpart do not cover—

\* \* \* \* \* \*

(vii) other articles specially provided for in schedule 7 or elsewhere

2. For the purposes of the tariff schedules—

(a) the term *"coated or filled"*, as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby;

\* \* \* \* \* \*

Textile fabrics, including laminated fabrics, not specially provided for:

\* \* \* \* \* \*

359.50   Of man-made fibers .......25¢ per lb.
+30% ad val.

Schedule 7, Part 12, Subpart B:

*Subpart B headnotes:*

1. This subpart covers rubber or plastics products (other than

waste or scrap) in the following forms:

\* \* \* \* \* \*

(b) film, strips, sheets, and plates, all the foregoing (whether or not printed, embossed, polished, or otherwise surface-processed) made or cut into rectangular pieces over 15 inches in width and over 18 inches in length;

\* \* \*

\* \* \* \* \* \*

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

\* \* \* \* \* \*

Not of cellulosic plastics materials:

Film, strips, and sheets, all the foregoing which are flexible:

\* \* \* \* \* \*

771.42 Other ..................12.5% ad val.

Samples of the merchandise were received in evidence at the trial. Exhibit 1 is illustrative of the ⅛-inch material having two cloth insertions. It appears to consist of outer layers and a core of rubber-like material, with fiber insertions.

Exhibits 2 and 3 are portions of the 2-ply and 3-ply rubber sheeting which was tested in the Customs Laboratory. They consist of fragments of rubber-like material and one or two pieces of cloth. According to the laboratory analyses, the merchandise is rubber sheeting containing one or two plain woven rayon fabric inserts. The rubber portions are composed chiefly of synthetic rubber by weight.

It was stipulated at the trial:

1. That the imported article weighs over 44 ounces per square yard.

2. That the imported articles do not contain more than 50 percent, by weight, of textile fibers.

3. That the fabric which has been coated or laminated is rayon.

4. That the fabric has been coated with nontransparent rubber, with the nontransparent rubber forming the surface of the article, or exposed surfaces of the article.

Plaintiffs called Max Bollock, who during the years 1965–1969 was employed as the vice-president and general manager of the importer, Marshall Co., Inc. His duties consisted of buying merchandise overseas and assisting in domestic sales. He bought general rubber products, mainly for the sporting goods field, such as air mattresses and surf-riders, and also transmission belting and fabric-rubber type combinations of material.

He was familiar with the rubber sheeting involved herein which was imported in two thicknesses—1/16-inch and ⅛-inch. The former had one cloth insertion and the latter two. The material is imported in tightly packed rolls and is approximately 48 inches wide and 33–40 feet long.

Mr. Bollock testified that the merchandise at bar was the first shipment of this particular type of material which he had sold but that he had seen the same material at the customer's place of business for a period of years. He had generally bought and sold rubber sheeting in fabricated form, as air mattresses, surf-riders, surf floats, rainwear, industrial type rainwear, or belting.

Bollock had observed this type of material being used by the ultimate purchaser of the imported merchandise and said that it was utilized for the manufacture of packing materials, such as gaskets, washers, and packing heads.

According to the witness, the merchandise is called rubber sheeting or C.I. sheeting in the trade. The latter term means cloth insertion sheeting, indicating that part of the sheeting is cloth.

Plaintiffs claim that this merchandise is more specifically provided for as flexible strips or sheets almost wholly of rubber than as textile fabrics, including laminated fabrics, not specially pro-

vided for; that the merchandise is almost wholly of rubber within the meaning of the tariff schedules, and that by virtue of headnote 5, schedule 3, *supra*, the merchandise is deemed to be wholly of rubber and is precluded from classification as assessed.

Defendant claims that the merchandise fits the description of fabrics "coated or filled" in headnote 2(a), part 4C, schedule 3, *supra*, and is therefore classifiable as textile fabrics as assessed, and that it is not classifiable as strips or sheets of rubber under item 771.42 because that provision is not intended to include supported sheeting.

It is clear that the merchandise consists in part of a textile fabric of man-made fibers and that it is composed of layers of such fabric and of rubber. In view of the classification, the merchandise is presumptively in chief value of man-made fibers. No evidence has been produced to show the contrary. The question is whether it is classifiable under item 359.50, as textile fabrics, including laminated fabrics, not specially provided for, of man-made fibers, or under item 771.42, as strips or sheets, wholly or almost wholly of rubber or plastics, not of cellulosic plastics materials, all the foregoing which are flexible.[1]

■ The former is a basket clause covering all textile fabrics "not specially provided for." Furthermore, in a headnote to the subpart in which it appears (headnote 1(vii), part 4C, schedule 3) it is stated that the subpart does not cover articles specially provided for in schedule 7 or elsewhere. Thus, an article specially provided for in schedule 7 is not classifiable under item 359.50.

The imported merchandise meets the specifications for film, strips, sheets and plates in headnote 1(b), part 12B of schedule 7 as to size and shape. It is flexible. It is in one of the forms covered by item 771.42, namely "strips", being narrow in relation to length. United States v. Border Brokerage Company, 48 CCPA 38, C.A.D. 760 (1960); Sommers Plastic Products Co. v. United States, 58 Cust.Ct. 409, C.D. 3002, 268 F.Supp. 490 (1967); Larry B. Watson Co., a/c Decoration Products Co. v. United States, 64 Cust.Ct. 343, C.D. 4001 (1970).

■ Does it meet the further requirement that it be almost wholly of rubber? "Almost wholly of" is defined in General Headnote 9(f)(iii) as meaning "that the essential character of the article is imparted by the named material notwithstanding the fact that significant quantities of some other material or materials may be present."

This definition has been before the court in United China & Glass Co. v. United States, 61 Cust.Ct. 386, C.D. 3637, 293 F.Supp. 734 (1968), and in Larry B. Watson Co., a/c Decoration Products Co. v. United States, *supra*.

The merchandise in the United China & Glass case consisted of a glass water ball mounted on a black plastic base with a plastic floral bouquet insert inside the ball. In holding that the glass water ball imparted the essential character to the article, the court noted (p. 389, 293 F.Supp. p. 737):

* * * The character of an article is that attribute which strongly marks or serves to distinguish what it is. Its essential character is that which is indispensable to the structure, core or condition of the article, i.e., what it is. Webster's Third New International Dictionary, 1966 edition. * * *

The indispensable and distinguishing part, that which imparts the essential character of the structured article in this litigation is, in our opinion, the glass ball. We say this because, if we take the glass ball away,

[1]. It has not been classified and is clearly excluded from classification under items 355.65–85, as amended, which cover, *inter alia*, woven fabrics of textile materials, laminated with sheet rubber, in view of headnote 2(c) to part 4C, schedule 3, which limits coverage to products weighing not over 44 ounces per square yard unless they contain more than 50 percent by weight of textile fibers.

we are left with (1) some plastic flowers set in a rubber cap and (2) a plastic base, neither of which has any utility, so far as the record shows, without the glass ball. Indeed, any decorative insert could quite easily be substituted in place of the plastic flowers without destroying the essential character of the article as manifest in the glass ball. * * *

The *Watson Co.* case involved polyvinyl chloride film, colored or metallized on both sides, imported in rolls and used in the manufacture of garlands. The court found that the essential character was imparted by the plastic content. It pointed out:

> The uncontradicted testimony reveals clearly that the characteristics of the imported film which make it desirable for the manufacture of decorations are its flexibility, its ease of die cutting and the fact that it is flameproof. These are the features or characteristics which distinguish it from other merchandise used for the same purpose, and these qualities are imparted by the polyvinyl chloride. If the color lacquer or metallic deposit were removed, or not added to the finished product, one would still have a basic raw material that could be fully utilized for the manufacture of decorations. * * *

> * * * To remove the "polyvinyl chloride film" would destroy the very thing sought for the "new and revolutionary process." It would seem clear that it is the film that is "indispensable to the structure, core or condition of the article."

The merchandise involved in this case has the appearance of rubber sheeting. It was invoiced as "Rubber Sheeting Insulating Material." According to the testimony, it is called rubber sheeting and C.I. (cloth insertion) sheeting in the trade. It is used as packing and insulating material to make gaskets, washers and packing heads. Such merchandise is expected to provide insulation against moisture, which is one of the functions of rubber. It is used for the purposes

for which rubber sheeting is used and not for any purposes for which cloth would be utilized. If no textile fabric had been inserted, the merchandise would still be rubber sheeting, but the fabric alone would have no utility in the manufacture of gaskets or similar articles. The merchandise does not have the appearance or characteristics of a textile fabric. It is the rubber which imparts the essential character to the article. Therefore, it is "almost wholly of" rubber within the definition.

Furthermore, the legislative history of the provisions covering merchandise composed of textile fabric, coated, filled, or laminated with rubber or plastics indicates that the characteristic Congress intended to be distinguishing for classification purposes was the outward appearance. See Report of the Ways and Means Committee of the House of Representatives in connection with the Tariff Schedules Technical Amendments Act of 1965 (House Report No. 342, 89th Cong., 1st Session), where it is stated (pp. 10–11):

> Textile fabrics which have been coated or filled or laminated with rubber or plastics are made to many specifications for a wide variety of uses. The fabrics are usually made of cotton or rayon and the most common coating, filling, or laminating substance is rubber or vinyl plastics. The vinyl-covered fabrics (sometimes referred to as "supported" vinyls) are often made in finishes which simulate leather. For some purposes, the rubber or plastics may cover both surfaces of the textile fabric, but for most purposes the rubber or plastics is applied to one surface only. Usually the rubber or plastic is opaque and completely obscures the textile fibers or yarns in the fabrics, but occasionally it is transparent and does not do so.

> These rubber- or plastic-covered fabrics are used in making rainwear, hunting jackets, footwear, headwear, gloves, luggage, handbags, furniture, and other articles. In the final product, the "textile" surface of the fabric

may form the outer surface of the article or the only exposed surface of the fabric, thereby lending to the article to the extent used therein the essential characteristic of a woven or knit fabric, or, on the other hand, such surface may form the inner surface of the article or be hidden or buried so that it is only the rubber- or plastic-covered surface which gives character to the finished product.

In order to effectuate its purpose, Congress amended the definition of "textile materials" in headnote 2 to read:

> 2. For the purposes of the tariff schedules—(a) the term *"textile materials"* means—
>
> \* \* \* \* \* \*
>
> (vi) except as provided by headnote 5, articles produced from any of the foregoing products;

It also added headnote 5, providing

> 5. For the purposes of parts 5, 6 and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

House Report No. 342, *supra*, points out (p. 12):

> \* \* \* The proposed amendment takes into account the consideration mentioned above that the textile characteristics of these fabrics may be completely lost in the final product. For example, simulated leather suitcases and gloves made of a "supported" vinyl bear no outward resemblance to a textile product. Thus, the proposed amendment of headnote 2(a) would exclude such fabrics from the

defined concept of "textile materials" and provide for their being regarded as wholly of rubber or plastics to the extent that, as used in the luggage, gloves, or other article made therefrom, nontransparent rubber or plastics forms either the outer surface of the article or the only exposed surface of the fabric.

It is defendant's view that the headnote applies only to the classification of articles as distinguished from fabrics and that the within merchandise is not covered thereby.

■ When Congress uses the term "articles", it sometimes intends it to have a broad meaning, including almost every separate substance or material, and at other times to have a narrower or more restricted meaning. United States v. Eimer & Amend, 28 CCPA 10, C.A.D. 117 (1940); D. N. & E. Walter & Co., et al. v. United States, 44 CCPA 144, C. A.D. 652 (1957). Its significance in each case must be determined from the context in which it is used. Close and Stewart v. United States, 58 Cust.Ct. 350, C.D. 2985, 268 F.Supp. 466 (1967). For instance, material, such as cotton cloth in the piece and rolls of cellulose sponge cloth, has been held to be an article within the meaning of pertinent tariff provisions. Lussky, White & Coolidge, Inc. v. United States, 21 CCPA 201, T.D. 46727 (1933); Joshua Hoyle & Sons, Ltd., Inc., et al. v. United States, 22 CCPA 265, T.D. 47326 (1934); R. J. Saunders & Co., Inc. v. United States, 54 CCPA 53, C.A.D. 904 (1967).

In the instant case the merchandise is a product or material to be used for further manufacture, but it is in one of the forms specified in the superior heading to item 771.42. The headnote here in question is directed specifically to classification under schedule 7, part 12, *inter alia*, without any exception for merchandise covered by subpart B thereof. It would appear that Congress meant that products described in that subpart should be considered as articles for the purpose of the application of the head-

note. As evinced in House Report No. 342, *supra*, it was the intent of Congress to make a distinction for tariff purposes between articles in which the textile portion constitutes the outer or exposed surface and those in which the textile portion is buried or hidden so that only the rubber or plastics surface gives character to the product. The instant merchandise bears no outward resemblance to a textile product. However it is used, the exposed surface or surfaces will be rubber. Congress did not intend such an article to be classified as a textile fabric, but as one wholly of rubber.

 Defendant claims, however, that the sheeting involved herein may not be classified under item 771.42 on the ground that that item covers only merchandise which is "unsupported". There is nothing presently in the heading preceding item 771.42 requiring that the merchandise covered thereby be "unsupported". However, this term did appear in the provision as originally enacted. It was deleted by the Tariff Schedules Technical Amendments Act of 1965 on the ground that it was surplusage and that where film, strips and sheets are supported, textile fabrics are the usual supporting media and such products are provided for in items 355.65–.85. (House Report No. 342, *supra*, pp. 12 and 13). Defendant infers that there was no intent to make a substantive change and that only unsupported film, strips or sheets are covered by item 771.42. Congress evidently considered the word unnecessary in view of items 355.65–.85 (which however, do not cover this merchandise). Nevertheless, it did delete the word and it may not be read back into the provision without a clear indication that Congress so intended. United States v. Marsching, 1 Ct.Cust. App. 216, T.D. 31257 (1911); Bentkamp v. United States, 40 CCPA 70, C.A.D. 500 (1952).

In any event, we do not think the merchandise involved herein is "supported" rubber. "Support" means to bear the weight of, especially from underneath, hold in position, keep from

falling, strengthen. To determine what Congress had in mind, we note item 376.50 of the tariff schedules as originally enacted, which Congress considered related to other provisions involving textile and rubber or plastics combinations. (House Report No. 342, *supra*, p. 12.) The language there used was "Garments with a textile-fabric supporting a rubber or plastics coating or covering on the outer surface of the garment." In the instant case the textile fabric is not a base supporting a rubber coating or covering but an insert between layers of rubber. The combined product is not "supported" rubber.

For the reasons stated, we hold that the rubber sheeting insulating material involved herein is properly dutiable at 12.5 per centum ad valorem under item 771.42 of the Tariff Schedules of the United States, as amended by the Tariff Schedules Technical Amendments Act of 1965, as strips, almost wholly of rubber, not of cellulosic plastics materials, which are flexible. To that extent the protest is sustained. As to all other claims it is dismissed. Judgment will be entered accordingly.

