**MARSHALL COMPANY, Inc., Hoyt, Shepston & Sciaroni, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**C.D. 4291; Protest No. 69/15149–126309.**

United States Customs Court,
Second Division.

Nov. 1, 1971.

---

14. There has been no allegation that an act of sexual intercourse occurs during the performance of "Hair."

Glad & Tuttle, Los Angeles, Cal. (Barnes, Richardson & Colburn, James S. O'Kelly, New York City, and Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Herbert P. Larsen, New York City, trial atty., for defendant.

Lamb & Lerch, New York City (Richard J. Kaplan, New York City, of counsel), amici curiae.

Before RAO, Chief Judge, and FORD, and NEWMAN, Judges.

RAO, Chief Judge:

This case, originally decided on December 18, 1970 (Marshall Co., Inc. v. United States, 65 Cust.Ct. 629, C.D. 4148, 320 F.Supp. 1003 (1970)), is now before us upon additional evidence presented at a rehearing granted on timely motion made by defendant.

In the decision previously rendered, we held that the merchandise, rubber sheeting insulating material composed of rayon fabric coated or laminated with rubber, the rubber forming the exposed surfaces of the merchandise, was properly dutiable as flexible strips, almost wholly of rubber, under item 771.42 of the Tariff Schedules of the United States, as amended by the Tariff Schedules Technical Amendments Act of 1965, rather than as textile fabrics, including laminated fabrics, of man-made fibers, not specially provided for, under item 359.50, as classified by the district director. On the basis of the record then before us we found that the merchan-

dise was "almost wholly of" rubber within the meaning of General Headnote 9(f)(iii) on the ground that the rubber imparted the essential character to the articles. We held that item 771.-42, as amended, did not require that the merchandise covered thereby be "unsupported," but that in any event, the merchandise involved was not "supported" rubber. We also held that within the meaning of headnote 5, schedule 3 of said tariff schedules, the merchandise was an article of which the rubber portion formed the exposed surfaces and that it was therefore to be deemed wholly of rubber for classification purposes.

On the basis of the additional testimony presented at the rehearing, defendant claims that the merchandise is not "almost wholly of" rubber because the fabric rather than the rubber imparts the essential character to the article. Defendant also maintains that the merchandise was intended by Congress to be classified as "wholly of" textile fibers since it is nothing more than a coated or laminated man-made fiber fabric material. *Amici curiae* take the position that the record now establishes that the fabric is at least as essential to the merchandise as the rubber. It is also claimed that this merchandise is "supported" rubber and is not included under item 771.42, and that it is a fabric, coated, filled or laminated with rubber and not an article wholly or in part of such fabric within the meaning of headnote 5, schedule 3.

The pertinent provisions of the tariff schedules, as amended, are as follows:

General Headnotes and Rules of Interpretation

\* \* \* \* \* \*

9. *Definitions.* For the purposes of the schedules, unless the context otherwise requires—

\* \* \* \* \* \*

(f) \* \* \*

\* \* \* \* \* \*

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; \* \* \*

*Schedule 3 headnotes:*

\* \* \* \* \* \*

2. For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

\* \* \* \* \* \*

(vi) except as provided by headnote 5, articles produced from any of the foregoing products;

\* \* \* \* \* \*

4. For the purposes of the tariff schedules—

\* \* \* \* \* \*

(b) In determining the component fibers of chief value in coated or filled, or laminated, fabrics and articles wholly or in part thereof, the coating or filling, or the nontextile laminating substances, shall be disregarded in the absence of context to the contrary.

5. For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12, of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

Schedule 3, Part 4, Subpart C:

*Subpart C headnotes:*

1. The provisions of this subpart do not cover—

\* \* \* \* \* \*

(vii) other articles specially provided for in schedule 7 or elsewhere.

2. For the purposes of the tariff schedules—

(a) the term *"coated or filled"*, as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby;

\*   \*   \*   \*   \*   \*

Textile fabrics, including laminated fabrics, not specially provided for:

\*   \*   \*   \*   \*   \*

359.50  Of man-made fibers
.........25¢ per lb.
+ 30% ad val.

Schedule 7, Part 12, Subpart B:

*Subpart B headnotes:*

1.  This subpart covers rubber or plastics products (other than waste or scrap) in the following forms:

\*   \*   \*   \*   \*   \*

(b) film, strips, sheets, and plates, all the foregoing (whether or not printed, embossed, polished, or otherwise surface-processed) made or cut into rectangular pieces over 15 inches in width and over 18 inches in length; \* \*· \*

\*   \*   \*   \*   \*   \*

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

\*   \*   \*   \*   \*   \*

Not of cellulosic plastics materials: Film, strips, and sheets, all the foregoing which are flexible:

\*   \*   \*   \*   \*   \*

771.42  Other ...... 12.5% ad val.

At the first hearing, it was stipulated

1.  That the imported article weighs over 44 ounces per square yard.

2.  That the imported articles do not contain more than 50 percent, by weight, of textile fibers.

3.  That the fabric which has been coated or laminated is rayon.

4.  That the fabric has been coated with nontransparent rubber, with the nontransparent rubber forming the surface of the article, or exposed surfaces of the article.

There was also testimony that the $\frac{1}{16}$-inch size had one cloth insertion and the $\frac{1}{8}$-inch two insertions; that the merchandise was used in the manufacture of packing materials, such as gaskets, washers, and packing heads, and that it was called rubber sheeting or C.I. (cloth insertion) sheeting in the trade.

A sample illustrative of the merchandise having two cloth insertions was received in evidence as exhibit 1.

At the rehearing, defendant called two witnesses, Robert W. Aufricht, assistant product manager for sheet rubber of Uniroyal, Incorporated, and Wesley W. Pontier, administrator of product sales for packings and gasket materials of Raybestos Manhattan, Inc. Mr. Aufricht testified that he had been a salesman of composite man-made fiber and rubber products and that he was presently in charge of the manufacturing and marketing of both unsupported and supported sheet rubber. Mr. Pontier's responsibility is to supervise various aspects of the sales operations of the packings and gasket materials division of his firm; he said it was essential for him to know the uses and characteristics of packings and gasket materials in order to recommend particular products for particular applications.

According to the testimony of these witnesses, the industry has two basic classifications for sheet rubber: (1) unsupported or all rubber products made without any other materials, and (2) supported or fabric-treated sheet rubber which consists of fabric and rubber. The latter is divided into two subclasses: (1) cloth inserted sheet which has a very light weight and has a light strength fabric portion which is put in primarily to stabilize the pull characteristics of the finished product and (2) diaphragm

sheet in which the strength of the fabric determines the service for which the product can be used. In cloth inserted sheet, the fabric is generally a natural vegetable material, such as cotton. Diaphragm sheet generally contains man-made fabrics or a heavy cotton duck.

In the industry, any construction of a sheet that is not totally rubber, anything that has a fabric of any kind in it, is referred to as supported sheet.

After examining exhibit 1 and in view of the stipulated facts, the witnesses said that the merchandise involved here is a diaphragm type sheet. Mr. Aufricht testified that since the fabric portion was rayon, he would put the merchandise in the diaphragm category. Otherwise, it might possibly be considered cloth inserted sheet.

The witnesses produced samples of supported sheet made by their respective firms with different fabric inserts: Exhibit A (cotton), exhibit B (nylon), exhibit C (cotton), and exhibit J (nylon). Also introduced into evidence were samples of sheet rubber which were wholly of rubber (exhibits D, E, and K).

Mr. Aufricht described the manner of manufacture of a fabric supported sheeting, such as exhibit A, as follows: The untreated fabric is put through a frictioning calendar and is then put into a small calendar machine between the second and third rolls of the calendar. Meanwhile, rubber is being introduced between the top and the middle rolls of the calendar, where it makes a half-revolution around the middle roll and comes in contact with and adheres to the fabric. The rubberized fabric then travels past a pressure roll and onto a take-up roll. To make a product such as exhibit A, the fabric would have to go through the roll more than once. Each time additional rubber is added. Neither in cloth inserted sheeting nor in diaphragm sheeting is the cloth actually inserted into rubber. The process starts with untreated fabric and rubber is applied or built on it.

Unsupported rubber sheeting is manufactured on the same type of machine, but the only ingredient is rubber. Normally the material goes through the rollers only once.

According to the record, there are significant differences between the unsupported types of sheet rubber and the supported ones. Unsupported sheet exhibits the basic characteristics of rubber. It is stretchable, has a tensile strength and a recovery factor, that is, after being stretched it recovers to, or very nearly to, its original size and shape. It has no measurable burst strength. Supported sheet is a combination of fabric and rubber in which the fabric restricts the stretchability of the sheet and gives it a burst strength of predetermined value. The fabric portion gives strength to the rubber and to the compound product and provides it with dimensional stability. It prevents the stretching or tearing of the rubber compound. These qualities are essential in cloth inserted sheet and in diaphragm material.

Rubber is also an essential ingredient, without which the material could not be used for the purposes for which diaphragm sheeting is normally utilized. There cannot be a cloth insert sheet or a diaphragm sheet without rubber. The function of the rubber is to seal the fabric, to protect it from environmental hazards under the service conditions for which it is intended. The fabric supports the rubber portion in that it holds it in position and strengthens it.

Diaphragm sheeting is used to produce industrial diaphragms and curtains, where stability and strength are required. Diaphragms are resilient membranes which react to pressure variations and actuate, in a predetermined and regulated manner, the pumps, valves, and regulators in which they are used. Supported sheet has other industrial uses —wherever it is desirable to have stable, nonstretching rubber and fabric combination material; for instance, in gaskets where changes in temperature and other factors cause stress, and the pressures are sufficient to require stabilizing material. For these purposes, it is essential

that the rubber portion be supported by fabric. Unsupported rubber sheet cannot be used for the same purposes because it will break or tear and will stretch and elongate.

While this testimony has to do with the method of manufacture and the characteristics of domestic merchandise, the witnesses considered the imported merchandise to be similar. No evidence has been presented to the contrary nor does the record show the method of manufacture of the imported merchandise. Under the circumstances, we deem that the evidence given with regard to the domestic products also applies to the imported merchandise.

The issue is whether the imported merchandise is properly classifiable as strips, wholly or almost wholly of rubber, under item 771.42, as amended, or as textile fabrics, not specially provided for, of man-made fibers, under item 359.50.

The components of the merchandise are rayon fabric and rubber. Defendant claims that, in view of the classification, the merchandise is presumed to be wholly or in chief value of man-made fiber. We are in accord that it is in chief value of man-made fiber on the basis of the presumption and on the evidence presented, which tends to support the presumption. We do not agree with defendant that it can be considered wholly of man-made fibers on the ground that under headnote 4(b), *supra*, the substances used for laminating, coating or filling are to be disregarded. Headnote 4(b) is directed toward the determination of the component fiber of chief value and is applicable where it is necessary to decide whether vegetable fiber, wool, silk, or man-made fiber is the fiber in chief value. In making that determination, the coating, filling, or laminating substance is to be disregarded. The headnote is no indication that it should be disregarded for other purposes. Briarcliff Clothes, Ltd. v. United States, 66 Cust.Ct. 228, C.D. 4194 (1971).

In the instant case plaintiffs claim thaat the merchandise is "almost wholly of" rubber within the meaning of General Headnote 9(f) (iii) and therefore falls within item 771.42, as amended. In our original decision, we so held, on the ground that the imported sheeting did not have the appearance or characteristic of a textile fabric and that the rubber imparted the essential character to the merchandise. No evidence was then presented as to the purpose of the fabric or what it contributed to the characteristics of the sheeting. At the rehearing considerable testimony was introduced on these points. In view of this testimony and on the basis of a reexamination of the applicable sections of the tariff schedules, as amended, and the legislative history thereof, we reach a different conclusion.

The evidence now before the court establishes that in producing sheeting, such as that involved herein, the fabric is not inserted between layers of rubber but rubber is applied to or built onto the fabric. It has also been shown that all-rubber sheeting and sheeting composed of rubber and fabric, called cloth insert or diaphragm sheeting, have different uses and characteristics. The former is stretchable, has a tensile strength and a recovery factor—characteristics of rubber. The latter has a burst strength of a predetermined value and dimensional stability, which characteristics are furnished by the fabric. Those characteristics are required for the uses to which cloth insert and diaphragm sheeting are put. Homogeneous rubber sheeting does not have them and cannot be used for the same purposes. Thus, it is the fabric which distinguishes this type of sheeting from other sheeting, and makes it what it is. Since those characteristics are supplied by the fabric, the imported sheeting cannot be "almost wholly of" rubber within the meaning of General Headnote 9(f) (iii), *supra*, A. N. Deringer, Inc. v. United States, 66 Cust.Ct. 378, C.D. 4218 (1971); Larry B. Watson Co., a/c Decoration Products Co. v. United States, 64 Cust.Ct. 343, C.D. 4001 (1970). Even though the rubber is an essential component of the

product, the fabric is at least equally essential. Therefore, the rubber does not impart *the* essential character to the article. Thus, the imported merchandise is not classifiable under item 771.42, as amended, on the basis of being "almost wholly of" rubber.

█ Defendant claims it is also excluded from coverage by item 771.42 even if deemed wholly of rubber by virtue of headnote 5, schedule 3, *supra*, on the ground that it is supported rubber and that said item does not include supported rubber film, strips, or sheets.

According to the present record, the merchandise is produced by applying rubber to the fabric not by inserting fabric between layers of rubber. Furthermore, it appears that in the industry the term supported rubber is used to identify rubber sheeting composed of fabric and rubber, whereas unsupported rubber refers to sheeting made entirely of rubber.

A re-examination of the Report of the Ways and Means Committee of the House of Representatives in connection with the Tariff Schedules Technical Amendments Act of 1965 (House Report No. 342, 89th Cong., 1st Session) in the light of the testimony herein indicates that Congress was using the term "supported" in the industry sense, that is, as referring to fabrics coated, filled, or laminated with rubber or plastics. For instance, said report states:

Textile fabrics which have been coated or filled or laminated with rubber or plastics are made to many specifications for a wide variety of uses. The fabrics are usually made of cotton or rayon and the most common coating, filling, or laminating substance is rubber or vinyl plastics. *The vinyl-covered fabrics (sometimes referred to as "supported" vinyls)* are often made in finishes which simulate leather. For some purposes, the rubber or plastics may cover both surfaces of the textile fabric, but for most purposes the rubber or plastics is applied to one surface only. * * * [p. 10] [Emphasis supplied.]

* * * * * *

The primary clarifications are provided for in subsections (a) and (c) (1) of section 13. Subsection (c) (1) would add a new headnote to subpart C, part 4, schedule 3, which would establish objective weight distinctions for determination of the relative quantities of the textile fibers and of the rubber or plastics material in the fabrics in question. In the absence of such a provision, doubt is created as to whether *certain products (sometimes referred to as "supported" rubber or plastics)* are intended to be covered in items 355.65–355.85. * * [p. 11] [Emphasis supplied.]

█ We therefore reverse our previous position and hold that the merchandise involved herein is supported rubber within the meaning of the tariff schedules.

Is it *ipso facto* excluded from coverage under item 771.42, as claimed by the Government?

There is nothing presently in the heading preceding item 771.42 requiring that the merchandise covered thereby be unsupported rubber or plastics. However, this term did appear in the provision as originally enacted. It was deleted by the Tariff Schedules Technical Amendments Act of 1965 as surplusage, the House Report stating that "where such film, strips, and sheets are supported, textile fabrics are the usual supporting media and such products are provided for in items 355.65–355.85."

Evidently Congress believed that all supported rubber and noncellulosic film, strips, and sheets would be covered by items 355.65–355.85. However, the merchandise involved herein is not, by reason of headnote 2(c) of part 4C, schedule 3, which excludes products weighing over 44 ounces per square yard and not containing more than 50 percent by weight of textile fibers.

█ Since Congress did in fact delete the words "and unsupported" from the heading preceding item 771.42, the actual language adopted would allow clas-

sification of supported rubber film, strips, or sheets under item 771.42, provided the merchandise is almost wholly of rubber or may be deemed an article wholly of rubber within the purview of headnote 5, schedule 3, *supra.*

As first enacted, the tariff schedules provided that the term "textile materials" included, *inter alia,* the fabrics provided for in parts 3 and 4 of schedule 3 and articles produced from them. Part 4 included woven or knit fabrics of textile materials, coated or filled with rubber or plastics material or laminated with sheet rubber or plastics (items 355.65–355.85). Such merchandise was covered by said items regardless of whether the textile fabric or the rubber or plastic component was of chief value and the fabric was regarded as a textile material when used in making other articles, whether or not the textile surface or the rubber or plastic-covered surface formed the outer surface of the article and gave character to the finished product. House Report, No. 342, *supra*; Briarcliff Clothes, Ltd. v. United States, *supra*; F. B. Vandegrift & Co., Inc. v. United States, 63 Cust.Ct. 12, C.D. 3866 (1969), appeal pending.

In the Tariff Schedules Technical Amendments Act of 1965, the definition of "textile materials" was amended so as to include, *inter alia,* articles produced from fabrics provided for in parts 3 and 4 of schedule 3, "except as provided by headnote 5." That headnote provides that

> For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

The purpose of the amendment was stated in House Report No. 342, *supra,* (p. 12), as follows:

> * * * The proposed amendment takes into account the consideration mentioned above that the textile characteristics of these fabrics may be completely lost in the final product. For example, simulated leather suitcases and gloves made of a "supported" vinyl bear no outward resemblance to a textile product. Thus, the proposed amendment of headnote 2(a) would exclude such fabrics from the defined concept of "textile materials" and provide for their being regarded as wholly of rubber or plastics to the extent that, as used in the luggage, gloves, or other article made therefrom, nontransparent rubber or plastics forms either the outer surface of the article or the only exposed surface of the fabric.

It is clear from the language of the headnote and the explanatory material in the report that an article produced from fabric, coated, or filled, or laminated with nontransparent rubber is not to be regarded as of textile material to the extent that the rubber forms the outer surface of the article or the only exposed surface of the fabric.

Although the language "the only exposed surface of such fabric" might be interpreted to mean that coated, filled, or laminated fabric *per se* is covered by the headnote, we do not find that such was the intent of Congress.

The question then is whether the imported merchandise is an "article" within the meaning of the headnote. In our original decision, we held that it was, pointing out that the headnote was directed specifically to classfication under schedule 7, part 12, *inter alia*, without any exception for merchandise covered by subpart B thereof, and concluding that Congress intended that products described in that subpart should be consid-

ered as articles for the purpose of the application of the headnote.

A further consideration of the language of the statute and the legislative history convinces us that the omission of an exception for merchandise covered by subpart B is not conclusive of the question at issue.

Headnote 5 specifically applies to classification of any article wholly or in part of a coated, filled, or laminated fabric (which fabric is provided for in part 4C of schedule 3). The portion of House Report No. 342 quoted above states that the headnote takes into account the fact that the textile characteristics of the fabric may be completely lost in the *final product* and provides that such fabrics be regarded as wholly of rubber or plastics to the extent that, as used in the "article *made therefrom*," rubber or plastics forms the outer or exposed surfaces. The Report of the Committee on Finance of the Senate (Report No. 530, 89th Cong., 1st Session) states (p. 26), U.S.Code Cong. & Admin.News p. 3440:

> \* \* \* Essentially, the changes provide that *articles made of this fabric* will be dutiable as textile articles to the extent that the textile fabric forms the outer or exposed surface of the article. \* \* \* (Emphasis supplied)

We conclude that it was the intent of Congress that coated, filled, or laminated fabric be regarded as other than a textile material only to the extent that nontransparent rubber or plastics forms the outer or exposed surfaces of such fabric as used in the final product made therefrom. The term "article" as used in headnote 5, schedule 3, *supra*, does not embrace an intermediate product, such as the sheeting involved herein, which is material to be used for further manufacture. Therefore, such merchandise may not be deemed wholly of rubber for the purposes of classification under item 771.42, *supra*.

It follows that the sheeting involved herein must be considered a textile fabric, coated with nontransparent rubber, for tariff purposes. Since it is excluded from classification under items 355.65–355.85, it was properly classified as a textile fabric, not specially provided for, if man-made fibers, under item 359.-50.

For the reasons stated, the protest is overruled. Judgment will be entered for the defendant.