V. G. NAHRGANG CO. F/A ANTHONY PAGLIALUNGO, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81–4–00410

Before BERNARD NEWMAN, *Judge.*

86

(Decided August 8, 1983)

*Sonnenberg & Anderson, Esqs. (Paul S. Anderson* and *Steven Sonnenberg, Esqs.* on the brief and at the trial) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Jerry P. Wiskin, Esq.,* on the brief and at the trial) for the defendant.

## INTRODUCTION

BERNARD NEWMAN, *Judge:* Plaintiff contests the classification by Customs (at the port of Detroit, Michigan) of certain rolls of waterproofing material imported from Italy in December 1979, and described on the invoices covered by the entries as "Paralon NT4" and "Paralon 77". In liquidating the entries, the District Director classified the importations under item 355.25 of the Tariff Schedules of the United States ("TSUS"), and duty was assessed at the rate of 12 cents per pound plus 15 per centum ad valorem. Plaintiff advances the claim that the merchandise is properly dutiable at the rate of 6 per centum ad valorem under item 771.42, TSUS.[1]

*Competing Statutory Provisions*

*Classified under:*

### SCHEDULE 3, PART 4, SUBPART C

Webs, wadding, batting, and nonwoven fabrics, including felts and bonded fabrics, and articles not specially provided for of any one or combination of these products, all the foregoing, of textile materials, whether or not coated or filled:

\*       \*       \*       \*       \*       \*       \*

355.25          Of man-made fibers .......................... 12¢ per lb. +
                                                          15% *ad val.*

---

[1] Plaintiff in its complaint has alternatively claimed that the merchandise is classifiable under item 521.11, TSUS, or under item 523.91, TSUS. However, since plaintiff has not pursued either of its alternative claims, at the trial or in its brief, they are deemed abandoned and are dismissed. *Cf. E. R. Squibb & Sons, Inc.* v. *United States,* 75 Cust. Ct. 193, C.R.D. 757, 432 F. Supp. 1354 (1975).

*Claimed under:*

### SCHEDULE 7, PART 12, SUBPART B

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

    \*      \*      \*      \*      \*      \*      \*

Not of cellulosic plastics materials:
  Film, strips, and sheets, all the foregoing which are flexible:

    \*      \*      \*      \*      \*      \*      \*

771.42      Other ...................................................... *6% ad val.*

### *Issue Presented*

Central to the resolution of this case is whether the imported merchandise is "wholly or almost wholly of * * * plastics," within the purview of the superior heading to item 771.42, as contended by plaintiff. For the reasons that follow, plaintiff's claim must be overruled.

### *The Record* [2]

· The subject merchandise—used for roofing and other waterproofing applications—consists of a mastic composed of modified bitumen (a mixture of bitumen and various polypropylenes) applied to a nonwoven polyester fabric core. The nonwoven polyester fabric core (sold under the trade name "Trevira") used in the Paralon NT4 weighs 150 grams per square meter while the fabric used in the Paralon 77 weighs 130 grams per square meter. Other than bitumen, polypropylenes and polyester fabric, there are small quantities of other component materials in the merchandise, but such other materials have no significance concerning the issues presented in this case.

Briefly, the imported goods are produced in the following manner: The mastic is obtained by mixing hot bitumen in a liquid state with the polypropylenes, which mixture is then processed into a membrane. After production of the mastic in the form of a membrane, the nonwoven polyester core is sunk into the mastic. The additional minor components in the products facilitate adhesion in their application and act as an antiadhesive to make the material easier to unroll.

The sole use of the Paralon products is for the waterproofing of roofs and other waterproofing applications. While bitumen alone

---

[2] At the trial, plaintiff and defendant each presented the testimony of three witnesses. Additionally, sixteen exhibits and the official entry papers were received in evidence on behalf of plaintiff, while twelve exhibits were submitted on behalf of defendant.

has good waterproofing characteristics, polypropylene (a plastics material) is added to the bitumen as a modifying agent for the purpose of imparting flexibility to the mastic. The nonwoven polyester fabric core, although not waterproof in itself, contributes tensile strength essential to an effective and "workable" waterproofing membrane (Tr 102). Additionally, "[t]he polyester fabric is used to obtain a waterproofing sheet in a continuous form in the fabrication process" (Tr 103).

## OPINION

Initially, we consider plaintiff's burden of proof in this case. If the merchandise is properly classifiable under item 771.42, TSUS, as asserted by plaintiff, then the Government's classification under item 355.25 is precluded by virtue of headnote 1(vii), Schedule 3, Part 4, Subpart C. *Cf. United States v. Canadian Vinyl Industries, Inc.,* 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977); *United States v. Elbe Products Corp.,* 68 CCPA 72, C.A.D. 1267, 655 F.2d 1107 (1981). In support of its cause that the merchandise is properly dutiable under item 771.42, TSUS, plaintiff maintains that the imported Paralon is "wholly or almost wholly of * * * plastics". The terms "wholly of" and "almost wholly of" are defined in General Headnote 9(f) (ii) and (iii) as follows:

> (f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
>
> \*     \*     \*     \*     \*     \*     \*
>
> (ii) "wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;
> (iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; * * *

As may be noted from the above, the TSUS term "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the presence of significant quantities of other materials. Respecting this criterion, Judge Landis observed in *United China & Glass Co. v. United States,* 61 Cust. Ct. 386, 389, C.D. 3637, 293 F. Supp. 734 (1968):

> The character of an article is that attribute which strongly marks or serves to distinguish what it is. Its essential character is that which is indispensable to the structure, core or condition of the article, i.e., what it is.

And in *Canadian Vinyl Industries, Inc. v. United States,* 76 Cust. Ct. 1, 2, C.D. 4626 (1976), *aff'd* 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977), Judge Watson commented:

Discernment of the essential character of articles is not likely to develop into an exact science but, insofar as some consistency and predictability is possible, it is likely to be found in concentrating on whether the material in question supplies the distinctive feature of the article and not in examining all the characteristics of the article and, if some other material contributes important characteristics, declining to give one material the primacy which its role deserves. General headnote 9(f)(iii) [footnote omitted] acknowledges the possibility that significant quantities of some other materials may be present and implicitly recognizes that those other materials will impart something to the character of the article.

Therefore, the existence of other materials which impart something to the article ought not to preclude an attempt to isolate the most outstanding and distinctive characteristic of the article and to detect the component material responsible for that "essential characteristic."

See also: Judge (now Chief Judge) Re's opinion in *Larry B. Watson Co.* v. *United States,* 64 Cust. Ct. 343, C.D. 4001 (1970).

Plaintiff argues that the essential character of the imported merchandise is its waterproofing capability, and that this character is imparted by the mastic portion of the merchandise. Further, plaintiff contends that the mastic portion is a "plastics" material as defined in Schedule 7, Part 12 headnotes:

*Part 12 headnotes:*

1. For the purposes of the tariff schedules—

\*   \*   \*   \*   \*   \*   \*

(b) the term *"plastics"* refers to—
(i) synthetic plastics materials, as defined in parts 1C and 4A of schedule 4,

SCHEDULE 4, PART 4, SUBPART A HEADNOTES, TSUS

2. The term *"synthetic plastics materials"*, in this subpart, embraces products formed by the condensation, polymerization, or copolymerization of organic chemicals and to which an antioxidant, color, dispersing agent, emulsifier, extender, filler, pesticide, plasticizer, or stabilizer may have been added. These products contain as an essential ingredient an organic substance of high molecular weight; are capable, at some stage during processing into finished articles, of being molded or shaped by flow; and are solid in the finished article. The term includes, but is not limited to, such products derived from esters of acrylic or methacrylic acid; \* \* \* polyethylene, polypropylene, and other polyalkene resins; \* \* \* These synthetic plastics materials may be in solid, semi-solid, or liquid condition such as flakes, powders, pellets, granules, solutions, emulsions, and other basic crude forms not further processed.

Defendant insists that plaintiff has failed to establish that the mastic portion of the merchandise is "plastics" as defined above, and that although polypropylene is plastic, the essential character of the merchandise is imparted by the bitumen and polyester core as well as polypropylene, since all three of these components are required for an effective waterproofing membrane.

While I agree with plaintiff that the essential character of the merchandise is its waterproofing capability,[3] plaintiff has failed to prove its claim that the mastic portion of the merchandise is a synthetic plastics material as defined in headnote 2 of Schedule 4, Part 4, Subpart A.

Plaintiff's argument, essentially, is, that the mastic portion is a "synthetic plastics material" because bitumen constitutes an organic material and polypropyl-ene is specifically mentioned in the headnote definition. Although the evidence shows that polypropylene was mixed with the bitumen as a modifier to impart flexibility to the mastic,[4] neither the bitumen in itself nor the mastic material as a whole was established to be a synthetic plastics material. To fall within the definition of "synthetic plastics materials" in headnote 2, part 4A, Schedule 4, a material must be "formed by the condensation, polymerization or copolymerization of organic chemicals". But there is not a scintilla of evidence in the record to show that either the bitumen (which is 70 percent by weight of the mastic) itself or the mastic as a whole was formed by any of the specified processes.

Moreover, while headnote 2, Schedule 4, Part 4A provides that the term "synthetic plastics materials" includes products "derived from" polypropylene, the mastic (which is 70 percent by weight bitumen) obviously was not derived from polypropylene.

Since the record does not establish that the mastic portion of the merchandise is a plastics material, plaintiff has failed to demonstrate that the merchandise is almost wholly of plastics within the purview of the superior heading to item 771.42, TSUS. I further conclude that since the mastic is not plastics, as defined in the TSUS, the merchandise obviously is not "wholly" of plastics by virtue of headnote 5 of the Schedule 3.[5]

Plaintiff's contention that the merchandise should be regarded as almost wholly of plastics, because it is allegedly in chief value of

---

[3] *Cf. A.N. Deringer, Inc.* v. *United States*, 66 Cust. Ct. 378, C.D. 4218 (1971).

[4] While polypropylene is concededly a plastics material, plaintiff does not contend that the essential character of the Paralon material (waterproofing) is imparted by the polypropylene modifier alone. *Cf. Marshall Co.* v. *United States*, 67 Cust. Ct. 316, C.D. 4291, 334 F. Supp. 643 (1971). On the contrary, plaintiff concedes (brief, 20) that any ancillary characteristics, such as flexibility or ease of application, "may go to the superiority of that particular product, but not to the one indispensable characteristic for which the subject merchandise is applied and utilized, waterproofing".

[5] Headnote 5 in Schedule 3 reads:

For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

plastics, is untenable. Inasmuch as the essential character of the merchandise (viz., its waterproofing capability) is not imparted by a plastics material, the merchandise cannot be regarded as "almost wholly of" plastics, irrespective of the component material of chief value. Simply put, component material of chief value is not the criterion for determining whether an article is almost wholly of a named material under General Headnote 9(f)(iii). *C. Itoh & Co.* v. *United States*, 1 CIT 223, 228, 520 F. Supp. 273, 276 (1981), *aff'd*, 69 CCPA 147, 678 F.2d 218 (1982).

In any event, plaintiff failed to prove the component material of chief value of the Paralon 77. It is well settled that the proper method for determining the component material of chief value is to ascertain the costs of the separate component materials at the time they have reached the state when nothing further need be done except combine them into the completed article. *United States* v. *Jovita Perez*, 44 CCPA 35, C.A.D. 633 (1957).

At the trial, plaintiff offered into evidence a memorandum covering the calculation of the values of various component materials used in Paralon NT4 and Paralon 77 prepared by plaintiff's witness Dr. Guido Satta, the Director of Production and Material for Imper S.p.A. of Torino, Italy, the manufacturer and exporter of the subject merchandise. Attached to Dr. Satta's memorandum are invoices taken from the manufacturer's business records and submitted to support the cost data used in the value calculations. I received the memorandum into evidence (as exhibit 15, with subexhibits A through F) subject to connection (Tr 69)), and defendant subsequently moved to strike that portion of exhibit 15 pertaining to Paralon 77 (Tr 84). I reserved decision on defendant's motion (Tr 88).

Defendant's motion to strike is granted, predicated on:

Dr. Satta testified that exhibit 9, consisting of a polyester fabric weighing 130 grams per square meter, was the only fabric utilized in Paralon 77 (Tr 35–37, 80). However, in exhibit 15, subexhibit C, Dr. Satta submitted an invoice for polyester fabric weighting only 110 grams per square meter, rather than the 130 grams per square meter fabric which Dr. Satta testified was used in the imported Paralon 77. Satta attempted to explain this discrepancy, on cross-examination, by stating that in the trade a tolerance of plus or minus 20 grams per square meter was permissible, and that "we tend to buy the lower limit of tolerance allowed" (Tr 81). Plainly, Dr. Satta's explanation is deficient.

While it may be true that the manufacturer had a permissible tolerance in the weight of the fabric core used in its product, the fact remains that only 130 grams per square meter fabric (as represented by exhibit 9) was utilized in the imported Paralon 77 material, according to Dr. Satta's own testimony (Tr 35–37, 80), and further, no proof was submitted as to the cost of such fabric. The circumstance that the manufacturer "tended" to buy the lowest

weight fabric within the permissible tolerance (Tr 81) clearly does not prove the cost to the manufacturer of the actual fabric weight (130 grams per square meter) utilized in the subject importation. Since plaintiff has failed to connect the cost of the 110 grams per square meter fabric covered by exhibit 15C with the cost of the 130 grams per square meter fabric utilized in the imported Paralon 77, defendant's motion to strike is granted.

The short of the matter is that plaintiff failed to establish that the mastic is plastic. Hence, we need not reach the question of whether it is the mastic alone which imparts the essential character to the subject merchandise, as contended by plaintiff, or whether the essential character is imparted by both the mastic and polyester core, as argued by defendant.

In summary, inasmuch as plaintiff has failed to prove that the imported merchandise is "wholly or almost wholly" of plastics, its claim under item 771.42 TSUS, is overruled.

Accordingly, the action is dismissed.