## ELBE PRODUCTS CORPORATION, Plaintiff,

v.

## UNITED STATES, Defendant.

### Court No. 78-9-01642.

United States Court of International Trade.

July 16, 1987.

Mandel & Grunfeld (Robert B. Silverman, on the brief and Steven P. Florsheim, New York City, at the trial and on the brief) for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, in Charge, Intern. Trade Field Office, (John J. Mahon, New York City, at the trial and on the brief) for defendant.

RAO, Judge:

This Civil action involves the proper classification under the Tariff Schedules of the United States (TSUS), of a product called "Viledon heel grips", manufactured in West Germany and imported into this country in 1977 in rolls of various lengths and approximately 5 to 10 inches in width.

The Customs Service of the United States (Customs) classified the merchandise under TSUS item 355.25, as non-woven fabrics, whether or not coated or filled, of

man-made fibers, at a duty rate of 12 cents per pound plus 15 percent ad valorem.

It is plaintiff's claim that the merchandise is properly classifiable under TSUS item 359.60, as textile fabrics, not specially provided for, of materials other than vegetable fibers, wool, silk, or manmade fibers, at a duty rate of 8.5 per cent ad valorem. Alternatively, plaintiff claims that the merchandise is properly classifiable under TSUS item 774.60, as other articles, not specially provided for, of rubber or plastics, other, at a duty rate of 8.5 per cent ad valorem.

The Viledon heel grips are manufactured by a process which combines a fiber component with a rubber component in a two step process. The textile fibers involved in this process are polyester, substandard polyester fiber, and cellulosic fibers, including rayon and acetate. These fibers are first mixed together and then carded. Then they are needled and densified. After this step, the fibers are checked for broken needles and shrunk by hot steam, with a 27 per cent shrinkage by area.

The mat produced by these steps is then immersed in a bath of latex rubber, pigment and antifoaming agents. The material is then heat shot in order to coagulate the rubber and dried so as to remove the moisture. A grinding process takes place and then the thick sheet that has resulted is cut into four separate sheets. These thinner sheets are then reimpregnated with the latex rubber by being immersed in the bath a second time, ground, and heat shot to remove the moisture. Plaintiff introduced into evidence samples of the material at each stage of manufacture and also two partially constructed shoes which demonstrate how the Viledon heel grips are utilized in shoe manufacture.

Dr. Jurgen Fehlhaber, plaintiff's only witness, is Director of Research and Development at the Carl Freudenberg Company in Weinheim, West Germany where the merchandise is manufactured. He testified concerning the manufacturing process for the Viledon heel grips and the costs involved. He also testified that the cost of the fiber, including expenses for machinery

and overhead, was 116.47 German pfenning per square meter of the product. The total cost of the rubber component was 158.84 pfenning per square meter.

It is plaintiff's position that general Headnote 9 of the TSUS governs the classification of this merchandise:

9. *Definitions.* For the purposes of the schedules, unless the context otherwise requires—

\* \* \* \* \* \*

(f) the terms "of," "wholly of," "in part of" and "containing," when used between the description of an article and a material (e.g., "furniture *of* wood," "woven fabrics, *wholly* of cotton," etc.), have the following meanings:

(i) "of" means that the article is wholly of or in chief value of the named material.

\* \* \* \* \* \*

Headnote 10 of the TSUS provides:

10. *General Interpretive Rules.* For the purposes of these schedules

\* \* \* \* \* \*

(f) an article is in chief value of a material if such material exceeds in value each other single component material of the article;

\* \* \* \* \* \*

Thus, according to the plaintiff, since the TSUS item under which Customs classified the merchandise requires articles covered by it to be *of* textile materials and *of* manmade fibers, the Viledon heel grips are not classifiable thereunder.

It is the defendant's position that the superior heading to item 355.25, TSUS, in Part 4 C to schedule 3, TSUS, controls classification. It reads as follows:

Webbs, adding, batting and nonwoven fabrics, including felts and bonded fabrics, any articles not specially provided for of any one or combination of these products, all of the foregoing, of textile materials, whether or not coated or filled.

Defendant maintains that it is the nonwoven and other fabrics which are to be considered the materials which are to be "of

textile materials." The placement of the additional words, "whether or not coated or filled" after the identification of the component materials of the nonwoven fabrics, can only be intended to signify that the coating or filling is not to be considered in determining whether the fabrics are of textile materials. Defendant claims that the value of the rubber or plastics materials in the coating or filling substance is not a factor in determining whether a nonwoven fabric is "of textile materials," and that the presence of the phrase, "whether or not coated or filled," in the superior heading renders the presence or absence, and consequently the value, of any rubber or plastic material irrelevant to classification in any of the provisions which fall under that superior heading, since the phrase is implicitly invasive of all such provisions.

The question before the court, therefore, is whether the rubber material or component in the instant merchandise is to be considered as a factor in determining whether it is *of* textile fabric and *of* man-made fibers.

Plaintiff relies on the case of *U.S. v. Elbe Products Corp.*, 655 F.2d 1107, 68 CCPA 72, C.A.D. 1267 (1981), for support of its position that headnote 4(b) does not mandate disregard of the coating or filling substances in determining component in chief value. In that case our appeals court cited with favor the following excerpt from *Marshall Co. v. United States*, 67 Cust.Ct. 316, C.D. 4291, 334 F.Supp. 643 (1971):

> The components of the merchandise are rayon fabric and rubber * * *. We are in accord that it is in chief value of man-made fiber * * * on the evidence presented * * *. We do not agree that it can be considered wholly of man-made fibers on the ground that under headnote 4(b) * * * the substances used for laminating, coating or filling are to be disregarded. Headnote 4(b) is directed toward the determination of the component fiber of chief value and is applicable where it is necessary to decide whether vegetable fiber, wool, silk, or manmade fiber is the fiber in chief value. In making that determination, the coating, fill-

ing, or laminating substance is to be disregarded. The headnote is no indication that it should be disregarded for other purposes. *Briarcliff Clothes, Ltd. v. United States*, 55 Cust.Ct. 227, C.D. 4197 (1971).

The Court went on to say that because the question of component fiber was not in issue, application of headnote 4(b) was inappropriate.

The defendant acknowledges the effect of the *Elbe* case, *supra*, but states that it is the intent of Congress that all fabrics, except for those that have been specifically provided for elsewhere, are to be classified in schedule 3, TSUS, citing the Tariff Classification Study (1960). (Plaintiff's brief at p. 22). A determination that the merchandise is classifiable under item 359.60, TSUS, would satisfy such Congressional intent.

Defendant alternatively claims that plaintiff has failed to prove that the rubber component in the merchandise is the component in chief value. The traditional method of determining the component material in chief value was set forth in *United States v. Jovita Perez*, 44 CCPA 35, C.A.D. 633 (1957), in which the Court stated that the value of the materials of which an article is composed shall be ascertained at the time when they have reached such condition that nothing remains to be done except to put them together. Defendant claims that since the fiber component is *twice* immersed in the rubber component, it is possible to establish the value of the component materials just prior to the second immersion, allocating to the fiber component the cost of the steps performed up to the second impregnation, including the first impregnation plus the costs of the steps performed on the impregnated fiber, such as the grinding and splitting. We do not agree.

■■■ Costs of processing applied after the point at which the component materials are combined are not factors to be considered in determining chief value. *United*

*States v. Jovita Perez, supra; Kores Manufacturing Corp. v. United States,* 3 CIT 178, 545 F.Supp. 1303 (1982). Consequently, all costs of grinding and splitting should not be considered in the computation of relative values here. Nor is it necessary to allocate any of the rubber component value to the fiber component value. Because impregnation occurs twice, the cost of all the rubber component is allocable to the value of the rubber component. Plaintiff properly ommited the costs of combining the rubber and fiber components, as well as the costs of steps after each of the impregnations.

Alternatively, defendant claims that, even disregarding the costs of impregnation, pregrinding, and slicing, the value of the fiber component exceeds the value of the rubber component. Under this theory, defendant would consider only the cost of the rubber up to the step involving the first impregnation and the relative weights of the fiber and the rubber prior to the first and second impregnation. However, defendant cited no authority for the proposition that relative weights are germaine in determining components in chief value on a per square meter basis and no testimony validating this approach was introduced at the trial. The Court is also of the opinion that the testimony at trial, defendant's theory that portions of the costs of the rubber component should be allocated to the fiber component.

Defendant urges the Court to consider the case of *C. Itoh & Co. American, Inc. v. United States,* 1 CIT 223, 520 F.Supp. 273 (1981), *aff'd* 69 CCPA 147, 678 F.2d 218 (1982), to have *stare decisis* effect on the issues presented here. The *C. Itoh* case involved the proper classification of a non-woven fabric which simulates the characteristics of suede and is known in the fashion industry as "Ultrasuede." In that case plaintiff failed to prove the value of the non-textile materials, particularly as to those additives such as solvents which could not be identified by the plaintiff's witness.

The testimony of plaintiff's witness in the instant case clearly established the costs of all the component materials involved in the manufacture of the merchandise, as well as other costs attributable to their preparation up to the point (or points) where the components are joined. Even taking into consideration the fact that Dr. Fehlhaber admitted that the cost of some of the fiber components could vary as much as 15 to 20 per cent, the cost of the fabric component would not exceed the cost of the rubber component, since the total purchase price of the fiber was 72.45 German pfenning per square meter. Even if we were to increase the cost of all the fiber twenty per cent, the cost of the fiber component would only be only 130.95 pfenning per square meter, still considerably below the cost of the rubber component (158.84 pfenning per square meter).

Defendant also directs the Court's attention to the enactment of the Trade and Tariff Act of 1984, Pub.L. 98–573, 98 Stat. 2948 (1984), Title I, Subtitle B, Section 111 of which specifically returned the classification of coated or filled textile fabrics such as those involved in *United States v. Canadian Vinyl Industries, Inc.,* 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977), and *Elbe, supra,* to subpart C, part 4, schedule 3, TSUS. Plaintiff concedes that the statutory amendment changed the law for merchandise imported subsequent to its enactment, but points to the fact that it would not be apply to importations made in 1977 and that it would not be applicable in any case under plaintiff's principal claim that the merchandise is properly classifiable under item 359.60 TSUS, since the statutory amendment does not affect questions of classification under competing provisions in Subpart 4(c) of Schedule 3.

Upon consideration of the entry papers, the testimony of the witness, the exhibits introduced into evidence, the excellent briefs of the parties, the Court concludes that the merchandise is properly classifiable as claimed by the plaintiff, under item 359.60, TSUS.

Let judgment be entered accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED:

Imported "Viledon" heel grips, established at trial to be in chief value of rubber was properly classifiable under item 359.60, Tariff Schedules of the United States and not under item 355.25, as claimed by the defendant.

