**ELBE PRODUCTS CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4865; Court No. 78–1–00124.**

United States Customs Court.

July 25, 1980.

Mandel & Grunfeld, New York City (Steven P. Florsheim, New York City, at the trial and on the briefs; Robert B. Silverman, New York City, on the briefs), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, Washington, D.C. (John J. Mahon, Washington, D.C., at the trial and on the brief), for defendant.

BOE, Judge:

The subject merchandise in the above–entitled action, described in the commercial invoices included in the official entry papers as "Forrita 80" and "Plantilla 80," was exported from Spain and entered at the port of New York in November 1976.

The articles in question were classified under item 355.25, TSUS, as modified by Presidential Proclamation 3822, 82 Stat. 1455, T.D. 68–9, providing:

> Webs, wadding, batting, and nonwoven fabrics, including felts and bonded fabrics, and articles not specially provided for of any one or combination of these products, all the foregoing, of textile materials, whether or not coated or filled:

> \*     \*     \*     \*     \*

355.25     Of man-made fibers . . . . . . 12¢ per lb. + 15% ad val.

The defendant alternatively asserts that the merchandise in question is properly classified under item 359.50, TSUS, providing:

> Textile fabrics, including laminated fabrics, not specially provided for:
>
> \*    \*    \*    \*    \*
>
> 359.50    Of man-made fibers ...... 25¢ per lb. + 30% ad val.

In its presentation to this court the plaintiff urges as its primary claim that the subject merchandise be classified under item 771.42, TSUS, providing:

> Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:
>    Of cellulosic plastics materials:
>
> \*    \*    \*    \*    \*
>
>    Not of cellulosic plastics materials:
>       Film strips, and sheets, all the foregoing which are flexible:
> \* \* \*       Made in imitation of patent leather       \* \* \*
> 771.42       Other ................ 6% ad val.
>          Of polyester
>          Of polyvinyl chloride
>          Of polyethylene
>          Of polypropylene
>          Other:

In the alternative the plaintiff contends that the subject merchandise be classified under item 774.60, TSUS, providing:

> Articles not specially provided for, of rubber or plastics:
>
> \*    \*    \*    \*    \*
>
> 774.60       Other ................ 8.5% ad val.

and in the further alternative under item 359.60, TSUS, providing:

> Textile fabrics, including laminated fabrics, not specially provided for:
>
> \*    \*    \*    \*    \*
>
> 359.60       Other ................ 8.5% ad val.

It has been stipulated by the parties that " . . . the subject merchandise in its imported condition, consists of strips or sheets made or cut into rectangular pieces over 15 inches in width and over 18 inches in length." R. at 5. It is admitted by the pleadings that the merchandise in question is flexible and not of cellulosic plastics materials.

From the evidence submitted, which likewise appears to be undisputed, "Plantilla 80" and "Forrita 80" are manufactured principally for use as linings in footwear. The former is designed for use as a sock lining covering the inner sole of the shoe; the latter is designed for use as an inside lining of the upper shoe. The subject articles consist of nonwoven fibers and plastic coatings.

In the manufacture of the nonwoven fabric, dry, cut fibers are laid out in the form of a web on a conveyor belt, thereby permitting the fibers to be immersed in a bath of synthetic latex. In a subsequent drying process, the latex and the fibers are bound together into a thin substrate.[1] This fabric, processed as afore–referred to, is sold in rolls to the manufacturer of "Forrita 80" and "Plantilla 80" for use in the manufacture of the merchandise in question.

In the production of the subject merchandise a thin layer of liquid polyurethane paste is applied to a special "siliconized" paper. As the coated paper is heated and dried in an oven, the solvent contained in the paste evaporates, leaving a solid polyurethane remainder. A layer of liquid polyvinyl chloride (PVC) is spread upon the hardened polyurethane layer and again passed through an oven in order to effect a partial drying of the applied PVC. A layer of plastic adhesive is then spread upon the "semi–rigid" polyvinyl chloride, on which the nonwoven fabric is then placed. This layered arrangement, consisting of the paper, polyurethane, polyvinyl chloride, plastic adhesive, and the nonwoven fabric, is passed through an oven causing the polyvinyl chloride to be expanded and "blown" by the heating process. After cooling, the paper is released and to the surface of the

---

1. Illustration of the texture of the processed substrate is evidenced by Plaintiff's Exhibits 5A and 5B.

plastic a lacquer is applied. When trimming and cutting are completed, the manufactured articles are in the form and constituency of the "Forrita 80" and "Plantilla 80," imported in rolls as the subject merchandise in the instant action.

The question presented for determination herein is illustrative of the imperspicuity encountered in the application of the provisions of schedule 3, TSUS, and the application of the provisions of schedule 7, TSUS, with respect to an article which may consist of materials in part provided for in each of said schedules. An examination of the Tariff Classification Study affords the opportunity to review the historical evolution of the present tariff schedules as they relate to the respective controverted classifications urged in the instant action. Clearly, there has been a failure to attain the clarity and specificity originally desired in their adoption.

■ Headnote 1(vii) to part 4, subpart C of schedule 3, TSUS, excludes from classification therein "other articles specially provided for in schedule 7 or elsewhere." Our inquiry in the present action, therefore, initially turns to a determination whether item 771.42, TSUS, as claimed by the plaintiff, serves to classify articles particularly characterized by the merchandise in question. An affirmative answer thereto precludes the classification of the merchandise under item 355.25, TSUS, as determined by the Customs Service or under the alternative classifications, items 359.50 or 359.60, TSUS, as urged respectively by the defendant and the plaintiff. *United States v. Canadian Vinyl Industries, Inc.*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977).

The superior heading to 771.42, TSUS, requires that merchandise classified thereunder be "wholly or almost wholly of . . . plastics." As defined by General Headnote 9(f)(iii), TSUS, " 'almost wholly of' means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present."

From the evidence adduced at the trial of the within action, the court can only conclude that the "essential character" of the subject merchandise is imparted by the plastic coatings, notwithstanding the presence therein of nonwoven fibers. It is undisputed that in serving as linings in footwear, only the plastic surfaces of "Forrita 80" and "Plantilla 80" are exposed. The nonwoven backing provides a substrate permitting the permanent attachment of the subject merchandise within the shoe. It is significant that all witnesses, in behalf of the plaintiff as well as the defendant, agree that the foremost characteristic which an imitation leather product, such as "Forrita 80" and "Plantilla 80," must possess is an appearance simulating genuine leather. Without exception, it is acknowledged that such a characteristic is exhibited in the subject merchandise and imparted thereto solely by the plastic coatings.

The evidence further discloses that the subject merchandise possesses other qualities singularly characteristic of leather products. The plastic coatings applied to "Forrita 80" and "Plantilla 80" in the manufacturing process provide a "soft feel," closely resembling the feel of leather. The smooth surface of the plastic coatings provides a resistance to abrasions, thereby protecting the inner shoe linings from wear as a result of the constant contact with the foot. From the testimony of plaintiff's witnesses it appears that because of the particular interest of customers within the commercial shoe industry in obtaining merchandise possessing the afore–described simulated qualities and characteristics of leather, little or no attention is given by these customers to the fabric substrate.

In its effort to demonstrate that the "essential character" of the subject merchandise is not imparted by the plastic coatings, the defendant offered evidence relating to certain qualities therein allegedly provided by the presence of the nonwoven fibers. Although it appears to be without dispute that the nonwoven fibers may contribute to additional characteristics possessed by "Forrita 80" and "Plantilla 80," such as tear–resistance, stretchability and burst–strength,

the court does not find from the testimony that the presence of the nonwoven fibers or their contribution to such additional characteristics possessed by the subject merchandise serves to alter the "essential character" thereof. On the contrary, defendant's witnesses concede that the nonwoven fiber, alone and without the plastic latex binder applied thereto, possesses little strength and would, in fact, fall apart if it were to be picked up or handled. Only the combination of the plastic coatings, the nonwoven fibers and the plastic latex binder applied to such fibers provide the tear–resistance and stretch characteristics which the defendant seeks to attribute to the nonwoven fiber.

■ Viewing all of the evidence in its entirety, this court concludes that it is the visual and tactile qualities of the plastic coatings which impart to the subject merchandise its ability to serve as an imitation leather. Notwithstanding any qualities as to the durability and strength of the subject merchandise to which the nonwoven fibers may contribute, the "essential character" thereof is imparted by the plastic coatings and, accordingly, the merchandise is "almost wholly of ... plastic" within the meaning of the superior heading to item 771.42, TSUS.

The defendant urges that the subject merchandise cannot be excluded from classification under part 4, subpart C of schedule 3, by virtue of headnote 1(vii) thereof, contending that the imported merchandise is not an "article" within the meaning of the exclusionary provisions of the headnote. In support of this contention, the defendant refers to headnote 5 in schedule 3, in which it is stated that an article consisting either in whole or in part of fabric which is coated with plastic "shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric." Citing the legislative history contained in the House Report to the Tariff

Schedules Technical Amendments Act of 1965, the defendant contends that headnote 5 to schedule 3, accordingly, relates solely to finished articles of the character specified in the legislative history, i. e., rainwear, hunting jackets, footwear, headwear, gloves, luggage, handbags and furniture.[2] A fortiori, the defendant argues that intermediate products, consisting of nonwoven fiber and plastic coatings, used in the finished article, therefore, are precluded by the language of headnote 5 to schedule 3 from classification as "articles not specially provided for" under schedule 7.

In what appears to be a full answer to defendant's contention, our appellate court has held that rolls of nylon fabric coated with a glossy polyurethane "skin" are "articles" within the meaning of headnote 1(vii) to part 4, subpart C of schedule 3 and, accordingly, properly classified under item 771.40, TSUS, as strips or sheets in imitation of patent leather. *United States v. Canadian Vinyl Industries, Inc., supra.*

The real thrust of defendant's argument in the instant action, however, is that the majority opinion in the *Canadian Vinyl* decision is in error and that the reasoning of our appellate court in that decision should not apply herein. This court cannot agree.

Pursuant to the Customs Simplification Act of 1954, the Tariff Commission was directed–

"to make a comprehensive study of the laws prescribing the tariff status of imported *articles*" and to "[e]stablish schedules of tariff classifications which will be logical in arrangement and terminology and adapted to the changes which have occurred since 1930 in the character and importance of *articles* produced in and imported into the United States and in the markets in which they are sold." Tariff Classification Study Submitting Report (Nov. 15, 1960) at 1. (Emphasis supplied.)

It is clear from the foregoing that in the drafting of the Tariff Schedules of the United States, a broad meaning was intend-

2. H.Rep. No. 342, 89th Cong., 1st Sess., 10–11 (1965).

ed to be given to the term "articles." The definition of that term should not be narrowed unless the context, scope or purpose of the applicable provisions should require otherwise. *D. N. & E. Walter & Co. v. United States*, 44 CCPA 144, 147–48, C.A.D. 652 (1957). The enumeration of specific types of finished articles referred to in the legislative history relating to headnote 5 to schedule 3, and upon which the defendant in part bases its restricted construction of the term "article," does not preclude the use of that term in a broader connotation under other applicable tariff schedules. In the within action we are not concerned whether the imported merchandise is an intermediate product of a finished article, as urged by the defendant, but rather whether the merchandise in question is an article "specially provided for in schedule 7." [3]

Contrary to the restricted and narrow meaning of the term "articles" attributed by the defendant to the classification of the imported merchandise, it appears to have been specifically intended in the drafting of the Tariff Schedules of the United States to include under items 771.40 and 771.42, TSUS, thereof, plastic articles in imitation of leather in the very form and character as evidenced by the merchandise in question. The Tariff Classification Study, Schedule 7, at 451, provides an insight with respect to the historical classification of such articles in the Tariff Act of 1930 as well as the intended purpose and purview of item 771.-42, under present tariff schedules:

"There have been significant imports of polyvinyl chloride film and sheets in imitation of *patent leather* and *fancy leather* which have been dutiable, by virtue of the similitude provision in paragraph 1559, at the rates applicable to such leathers in paragraph 1530. These rates are used for *such plastics materials* in items 771.40 and 771.42." (Emphasis supplied.)

This court, therefore, concludes that the merchandise in question as imported has been "specially provided for in schedule 7" within the meaning and intent of headnote 1(vii) to part 4, subpart C of schedule 3. The more specific classification of the merchandise in issue provided for in item 771.-42, TSUS, prevails over the "basket provision" at item 774.60, TSUS, alternatively claimed by the plaintiff. See *Travenol Laboratories, Inc. v. United States*, 622 F.2d 1027, 67 CCPA ——, C.A.D. 1247 (1980).

Accordingly, the court finds that the Customs Service's classification of the merchandise in issue under item 355.25, TSUS, is in error and that the claimed classification by the plaintiff with respect to the subject merchandise under item 771.42, TSUS, is correct and proper and must be affirmed.

Let judgment be entered accordingly.

---

**3.** In a prior decision, *Marshall & Co. v. United States*, 67 Cust.Ct. 316, C.D. 4291, 334 F.Supp. 643 (1971), this court's opinion predicated its decision in part upon the distinction between an intermediate product and the final article. Though this distinction may be significant in some contexts, this court is unable to agree with its application in the *Marshall* decision or in the case at bar. Cognizance was not taken therein of headnote 1(vii), part 4, subpart C, schedule 3, TSUS–the determinative factor in reaching the proper classification of the merchandise in question.