The UNITED STATES, Appellant,

v.

ELBE PRODUCTS CORP., Appellee.

No. 80–40.

United States Court of Customs and Patent Appeals.

July 16, 1981.

Steven P. Florsheim, Robert B. Silverman, New York City, for appellee.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Atty. in charge, John J. Mahon, New York City, for appellant.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER, and NIES, Judges.

MARKEY, Chief Judge.

The Government appeals from the judgment of the United States Court of International Trade [1] sustaining the claim of Elbe Products Corporation (Elbe) that the imported rolls of flexible nonwoven fabrics are properly classifiable under item 771.42, Tariff Schedules of the United States (TSUS), and refusing classification under item 355.25, TSUS. We affirm.

1. The judgment of the United States Customs Court, now the United States Court of International Trade, is reported at —— Cust.Ct. ——, C.D. 4865, 497 F.Supp. 707 (1980).

## Background

The subject merchandise, imported by Elbe from Spain in November 1976, is described in entry papers as "Forrita 80" and "Plantilla 80" and consists of rolls of flexible nonwoven fabrics of man-made fibers coated or filled with a plastic binder and having a plastic coating on one surface. Forrita 80 and Plantilla 80 are "imitation" leathers manufactured principally for use as linings in footwear. When so used, the plastic coating is the only surface visible in the completed product.

Customs Service officials classified the merchandise under item 355.25, TSUS.[2] Elbe protested that classification and advanced a claim under item 771.42, TSUS.[3]

The Court of International Trade sustained Elbe's claim, holding that the merchandise is "almost wholly of" plastics within the meaning of item 771.42, TSUS (as the quoted term is defined in General Headnote 9(f)(iii)),[4] because the essential character of the merchandise, that is, its visual and tactile qualities simulating genuine leather, is imparted by the plastic coating. Accordingly, the court determined that the merchandise is excluded from classification in

2. Item 355.25, TSUS provides:

   Webs, wadding, batting, and nonwoven fabrics, including felts and bonded fabrics, and articles not specially provided for of any one or combination of these products, all of the foregoing, of textile materials, whether or not coated or filled:
   . . . .
   355.25  Of manmade fibers . . . . . .  12¢ per lb. + 15% ad val.

3. Item 771.42, TSUS provides:

   Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:
   . . . .
   Not of cellulosic plastics materials:
   Film, strips, and sheets, all the foregoing which are flexible:
   771.42  Other . . . . . . . . . . . . . . . . .  6% ad val.

4. General Headnote 9 provides in pertinent part:

   9. *Definitions.*—For the purposes of the schedules, unless the context otherwise requires—
   . . . .

schedule 3, pt. 4, subpart C (which includes item 355.25, TSUS) by headnote 1(vii) to that subpart. That headnote excludes from classification in pt. 4, subpart C, "other articles specially provided for in schedule 7 or elsewhere."[5]

## Issue

Whether the trial court erred in holding the merchandise properly classifiable under item 771.42, TSUS.

## OPINION

The Government maintains that the imported merchandise is not excluded from classification in schedule 3, pt. 4, subpart C by headnote 1(vii) because the merchandise is not an "article" within the meaning of that headnote. That term, says the Government, was intended to include only finished consumer goods and not intermediate manufactured products, such as Forrita 80 and Plantilla 80, as evidenced by the statute and its legislative history.

In support of that contention, the Government points to schedule 3, headnotes 2(a)(vi) and 5.[6] Taken collectively, those

   (f) the term "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e. g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
   . . . .
   (iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present.

5. Headnote 1(vii) provides:

   1. The provisions of this subpart do not cover—
   . . . .
   (vii) other articles specially provided for in schedule 7 or elsewhere.

6. Those headnotes provide in pertinent part:
   *Headnote 2*:
   2. For the purposes of the tariff schedules—
   (a) the term "textile materials" means—
   (i) the fibers . . . ,
   (ii) the yarn intermediates and the yarns . . . ,
   (iii) the cordage . . . ,
   (iv) the fabrics . . . ,

headnotes exclude certain "articles" made of fabric from the textile provisions of schedule 3 and provide that those "articles" shall not be regarded as textile materials but rather "as wholly of . . . plastics" provided that, as used in the article, plastic forms the outer surface of the article or the only exposed surface of the fabric.

Citing the legislative history contained in the House Report on the Tariff Schedules Technical Amendment Act of 1965, the Government says that the articles so excluded are limited to finished products which incorporate a coated fabric, of the type referred to in the legislative history, e. g., gloves, luggage, handbags, and do not include interim products such as the imported rolls of coated fabrics.[7] The Government says that because there is no contrary indication in the statute, this interpretation is equally applicable to the term "articles" as used in Pt. 4, subpart C, headnote 1(vii). That Congress intended that construction, says the Government, is buttressed by the superior heading to item 355.25, TSUS[8] which says "whether or not coated or filled," making the presence of any plastic material irrelevant in determining whether a fabric is "of textile materials" and therefore classifiable thereunder. It is the

Government's view that that language together with that of the headnotes evidences a congressional intent to distinguish in schedule 3 between basic textile materials and finished products made from such materials.

In response to the Government's contentions, Elbe cites *United States v. Canadian Vinyl Industries, Inc.*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977), as stare decisis.

*Canadian Vinyl* involved the proper tariff classification of an imitation patent leather manufactured by coating plastic onto a nylon fabric. In affirming the decision and judgment of the lower court, this court held that the imported rolls of fabric were "articles" within the meaning of headnote 1(vii) and properly classifiable under item 771.40, TSUS as strips or sheets in imitation of patent leather. In rejecting a restrictive interpretation of the term "articles" as used in the headnote, this court said:

> [W]e find no basis in the statute or even in the cited legislative history to read the word "article" in such restrictive manner. Although finished products such as gloves and luggage are discussed in the legislative history as examples of "articles," there is no narrowing definition given

---

(v) braids, . . ., and
(vi) except as provided by headnote 5, articles
produced from any of the foregoing products.
*Headnote 5*:
5. [I]n determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

7. The Government quotes the following language from the House Report (all emphasis by the Government):

Textile fabrics which have been coated or filled or laminated with rubber or plastics are made . . . for a wide variety of uses. . . . These rubber- or plastic-covered fabrics are used in making *rainwear, hunting jackets, footwear, headwear, gloves, luggage, handbags, furniture, and other articles.*
. . . .

Subsection (a) would amend the definition of "textile materials" in headnote 2(a) of schedule 3. . . . The proposed amendment takes into account the consideration mentioned above that the textile characteristics of these fabrics may be completely lost in the final product. For example, simulated leather suitcases and gloves made of a "supported" vinyl bear no outward resemblance to a textile product. Thus, the proposed amendment of headnote 2(a) would exclude such fabrics from the defined concept of "textile materials" and provide for their being regarded as wholly of rubber or plastics to the extent that *as used in the luggage, gloves, or other articles* made therefrom, nontransparent rubber or plastics form either the outer surface of the article or the only exposed surface of the fabric.
H.R.Rep. No. 342, 89th Cong., 1st Sess. 10–13 (1965).

8. *See* note 2, supra.

therein for the term. In our view the films, strips, sheets, etc. enumerated in the superior heading to item 771.40 are all articles which are excludable from schedule 3 by virtue of headnote 1(vii) to part 4C of schedule 3, provided they meet the other classification requirements in issue.

*Id.* at 105–106, 555 F.2d at 811.

Contrary to the restricted and narrow meaning that the Government would attribute to the term "articles", this court in *Canadian Vinyl* noted various portions of the legislative history establishing that Congress intended no distinction for classification purposes between finished and partly finished articles. Pointing to one such portion, this court said:

This view . . . is reinforced by the Tariff Classification Study, Submitting Report (1960) (TCS), Schedule 7, p. 440, which states:

[T]he proposed provisions of part 12 [of schedule 7] do not distinguish between products on the basis of whether they are or are not made into finished or partly finished articles. Objective distinctions based on specified dimensions have been substituted.

*Id.* at 106, 555 F.2d at 811.

■ Though the Government urges that the *Canadian Vinyl* decision is in error and should not be applied here, we find no reason to depart from the construction of "articles" adopted in that case and applied by the court below.

The Government cites various provisions in schedule 3, which it says support its interpretation of "articles", but that term as used in various other schedule 3 provisions is clearly not restricted in the manner the Government claims. For example, pt. 4, subpart C, headnote 2(a) reads in part:

2. For the purposes of the tariff schedules—

(a) the term "coated or filled", as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled . . . .

The phrase "textile fabrics and other textile articles" clearly indicates that "articles" refers here, *inter alia*, to textile fabrics.

A similar conclusion is compelled by the language of schedule 3, pt. 4, subpart C, headnote 1, which excludes from classification in that subpart, various named items (headnote 1(i)–(vi)) and "other articles specially provided for in schedule 7 or elsewhere" (headnote 1(vii)).[9] Because those named items include not only finished products but also "intermediate" products, e. g., hair felt, cloth-lined or reinforced paper, the term "articles" in headnote 1(vii) must refer to both finished consumer goods and intermediate goods.

Moreover, the following language of headnote 5, a headnote the Government cites in support of its position, supports the exclusion from schedule 3, of a coated, filled or laminated fabric per se provided the recited condition is met:

[T]he fabric shall be regarded not as a textile material but as being wholly of . . . plastics to the extent that (as used in the article) the . . . plastics forms either the outer surface of such article or the only exposed surface of such fabric.

■ Because we find that the term "articles" as used in headnote 1(vii) may properly encompass merchandise such as Forrita 80 and Plantilla 80, the appropriate inquiry is whether the Court of International Trade correctly held that merchandise classifiable under item 771.42, TSUS.

That court found that the visual and tactile qualities of the plastic coating impart to the merchandise its ability to serve as an imitation leather and thereby provide its essential character. Applying headnote

**9.** Headnote 1 provides in pertinent part:

1. The provisions of this subpart do not cover—
    (i) any of the products described in part 5, 6, or 7A of this schedule;
    (ii) cloth-lined or reinforced paper . . .;
    (iii) cloths coated with abrasives . . .;
    (iv) fish landing nets . . .;
    (v) laminated or reinforced plastics . . .;
    (vi) hair felt, and articles thereof . . .; or
    (vii) other articles specially provided for in schedule 7 or elsewhere.

9(f)(iii),[10] the court therefore concluded that the merchandise is "almost wholly of" plastics within the meaning of item 771.42.

The Government says that headnote 9(f) should not have been applied because that headnote is not applicable to coated or filled textile materials, and that schedule 3, headnote 4(b) should be applied instead. Application of headnote 4(b) would, in the Government's view, preclude consideration of the plastic coating and compel classification of the merchandise under item 355.25, TSUS as an article "of manmade fibers" regardless of the relative value of the plastics component.

The Government's contention is without merit. That headnote 4(b) does not mandate disregard of the coating or filling substance in the manner propounded by the Government was made clear by the Court of International Trade in *Marshall Co. v. United States*, 67 Cust.Ct. 316, C.D. 4291, 334 F.Supp. 643 (1971). In considering the proper classification of imported rubber-coated rayon fabric, the court said:

> The components of the merchandise are rayon fabric and rubber. . . . We are in accord that it is in chief value of manmade fiber . . . on the evidence presented . . . . We do not agree . . . that it can be considered wholly of man-made fibers on the ground that under headnote 4(b) . . . the substances used for laminating, coating or filling are to be disregarded. Headnote 4(b) is directed toward the determination of the component fiber of chief value and is applicable where it is necessary to decide whether vegetable fiber, wool, silk, or man-made fiber is the fiber in chief value. In making that determination, the coating, filling, or laminating substance is to be disregarded. The headnote is no indication that it should be disregarded for other purposes. *Braircliff Clothes, Ltd. v. United States*, 66 Cust.Ct. 228, C.D. 4194 (1971).

*Id.* at 323, 334 F.Supp. at 648.

Because the question of component fiber in chief value is not at issue in this case, application of headnote 4(b) is inappropriate.

The Government says that even if general headnote 9(f) is applicable, the subject merchandise is not "almost wholly of" plastics because the non-woven fabric substrate and its plastic coating are equally essential to the usefulness of the product. The Government says that neither component, each being equally essential, can provide the essential character of the complete article.

There is ample evidence of record to support the trial court's holding that the plastic coating supplies the essential character of the merchandise. It is undisputed that the foremost characteristic of Forrita 80 and Plantilla 80, the ability to simulate the appearance of leather, is solely attributable to the plastic coating. Moreover, in serving as linings in footwear, only the plastic surfaces of Forrita 80 and Plantilla 80 are exposed.

The evidence further establishes that the plastic coating simulates the feel of leather; that it provides resistance to abrasions when used for inner shoe linings; and that customers within the commercial shoe industry, who are interested in obtaining imitation leathers, give little or no attention to the fabric substrate.

Though it is undisputed that the nonwoven fabric substrate contributes desirable properties to the merchandise, there is no evidence that it alters the essential character of the merchandise or that it is indispensable. On the contrary, though some type of substrate is required, a nonwoven fabric need not be used. There is evidence that woven fabrics and paper are satisfactory substitutes.

### Conclusion

Schedule 3, pt. 4, subpart C, headnote 1(vii) excludes from classification in that subpart "articles specially provided for in schedule 7 or elsewhere". Those "articles" are not restricted to finished consumer goods and may include intermediate products.

Because the essential character of Forrita 80 and Plantilla 80 is imparted by the plas-

---

10.  *See* note 4, supra.

tic coating, the merchandise is properly classifiable under item 771.42, TSUS. As such, it is excluded from schedule 3, pt. 4, subpart C by headnote 1(vii) to that subpart. Accordingly, the judgment of the Court of International Trade is *affirmed.*

MILLER, Judge, dissenting.

I would reverse the judgment below based on the views expressed in my dissenting opinion in *United States v. Canadian Vinyl Industries, Inc.*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977).