**TAKASHIMA U.S.A., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 88–03–00252.***

United States Court of
International Trade.

Dec. 4, 1992.

\* Consolidated with:
1. *Takashima U.S.A., Inc. v. United States,* 82–5–00654
2. *Takashima U.S.A. v. United States,* 82–6–00793
3. *Takashima U.S.A., Inc. v. United States,* 83–3–00391
4. *Takashima U.S.A., Inc. v. United States,* 83–4–00552

5. *Takashima U.S.A., Inc. v. United States,* 83–7–01057
6. *Takashima v. United States,* 84–7–00976
7. *Takashima v. United States,* 84–11–01679
8. *Takashima v. United States,* 85–4–00572
9. *Takashima U.S.A., Inc. v. United States,* 85–10–01465
10. *Takashima U.S.A., Inc. v. United States,* 86–3–00299

**308**

Politis, Pollack & Doram, John N. Politis, Elon A. Pollack, Los Angeles, CA, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, John J. Mahon, Washington, DC, for defendant.

### OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff, Takashima U.S.A., Inc., challenges the classification and liquidation of its imported merchandise, laminated polyethylene sheeting and foam-backed polyethylene sheeting, pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988). This Court has jurisdiction under 28 U.S.C. § 1581(a) and, for the reasons which follow, enters judgment for plaintiff.

**1.** Because Congress renumbered item 771.42 as 771.43 in 1980, the Court will examine plaintiff's

## I. BACKGROUND

### A. *The Merchandise*

The merchandise at issue in this consolidated case consists of two types of laminated polyethylene sheeting. The first type contains a fabric core with lamination on both sides. The second type is identical to the first except that it also has a polyethylene foam backing. The fabric core is a loosely woven, polyethylene fabric and the lamination is a polyethylene plastic film, usually 30 microns thick. Plaintiff generally imports the sheeting in two widths, 72 inches and 144 inches, and in various colors. The sizes and colors make plaintiff's merchandise adaptable to different uses, all of which require protective covering against the elements.

Consumers use the sheeting in various contexts. Farmers protect modules of harvested cotton against rain, dust, fungus and ultra violet (UV) rays with tarps made from plaintiff's merchandise. Pool owners cover their pools with covers fabricated from plaintiff's foam-backed sheeting to retain heat and to guard against debris. Railroad companies safeguard their cargo with tarps comprised of the polyethylene sheeting. In addition, builders line irrigation ditches with the sheeting to prevent water from seeping into the ditches' dirt foundation.

### B. *Relevant Statutory Provisions*

Plaintiff relies on the following provisions of the Tariff Schedules of the United States (TSUS):

1. *Schedule 7, Part 12:* Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics (con.):

 . . . .

 *Not of cellulosic plastics materials:*
 Film, strip, and sheets, all the foregoing which are flexible:

 . . . .

 Item 771.43 [1] Other:

pre–1980 claims under 771.42 and the post–1979 claims under 771.43. Since the text of and

....

 .14 Of polyethylene....

2. *Schedule 3, headnote 2:* For purposes of the tariff schedules—

(a) the term *"textile materials"* means—

....

(vi) except as provided by headnote 5, articles produced from any of the foregoing products. (Emphasis in original).

3. *Schedule 3, headnote 5:* For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

4. *Schedule 3, part 4, subpart C, headnotes:* 1. The provisions of this subpart do not cover—

....

(vii) other articles specially provided for in schedule 7 or elsewhere.

Defendant relies on the following TSUS provisions:

1. *Schedule 3, Part 4, Subpart C:* Woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics:

....

Of man-made fibers:

....

Item 355.82 Other....

2. *General Headnotes and Rules of Interpretation 9(f)(iii): Definitions.*

For the purposes of the schedules, unless the context otherwise requires—

....

(f) the term[ ] ... "almost wholly of" ... when used between the description of an article and a material ..., ha[s] the following meaning[ ]:

....

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present.

## C. *Customs' Classification*

The United States Customs Service (Customs) classified the imported merchandise under item 355.82, TSUS. This item applies to "[w]oven or knit fabrics ... of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics: of man-made fibers: Other (than over 70% by weight or rubber or plastics)." Pursuant to item 355.82, Customs imposed the following duties depending on the dates of entry: (1) 15% *ad valorem* plus 12.5 cents per pound; (2) 13.9% *ad valorem* plus 10 cents per pound; (3) 12.8% *ad valorem* plus 8 cents per pound; and, (4) 11.8% *ad valorem* plus 6 cents per pound.

Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) contesting Customs' classification. Customs subsequently denied the protests and, after having paid all liquidated duties, plaintiff commenced this action within the time allowed by law.

## II. CONTENTIONS OF THE PARTIES

Plaintiff advances two separate arguments in support of its position. First, plaintiff argues that schedule 3, headnote 5 precludes the application of item 355.82 to its merchandise. Plaintiff asserts that because the sheeting's plastic lamination is nontransparent and forms the sheeting's outer surfaces, the sheeting is an "article" within headnote 5. Accordingly, plaintiff

outcomes under both provisions are identical, the Court will simplify its discussion by only

referring to item 771.43.

claims the Court must disregard the merchandise's fabric portion and require Customs to reliquidate the merchandise under item 771.43.

Plaintiff's second argument also relies on item 771.43. Plaintiff maintains that in the event the Court does not apply headnote 5, the polyethylene sheeting nonetheless satisfies item 771.43 because the sheeting's "essential character" is imparted by its plastic component as defined by the General Headnotes and Rules of Interpretation 9(f)(iii), TSUS. Plaintiff further asserts that since its merchandise falls under item 771.43, the exclusionary rule provided in schedule 3, part 4, subpart C headnote 1(vii), TSUS, removes the merchandise from the scope of item 355.82.

Defendant contends that Customs correctly classified the polyethylene sheeting under item 355.82, for two principal reasons. First, defendant argues that the imported merchandise's "essential character" requires classifying the merchandise under 355.82. Defendant asserts that textiles, not plastics, define the sheeting's "essential character" and therefore the sheeting does not satisfy item 771.43. Consequently, defendant posits that because the sheeting lies outside 771.43 and the ambit of schedule 7, schedule 3, part 4, subpart C headnote 1(vii) is inapplicable. As a result, schedule 3, part 4, subpart C headnote 1(vii) will not exclude the sheeting from schedule 3 and classifying the merchandise under item 355.82 is required.

Second, defendant argues that schedule 3, headnotes 2(a)(vi) and 5 do not apply to the polyethylene sheeting. Defendant asserts that these provisions only apply to "articles" and that this term only encompasses finished products. According to defendant, plaintiff's merchandise is only an intermediate product and as such is outside the scope of schedule 3, headnotes 2(a)(vi) and 5.

## III. DISCUSSION

### A. *Presumption of Correctness*

■ As in all customs cases, a statutory presumption of correctness attaches to classifications by the Customs Service and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1). To determine whether an importer has overcome the statutory presumption, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984).

### B. *Application of Schedule 3, Headnotes 2(a)(vi) and 5*

■ Where statutory construction is at issue, the starting point of any analysis must be the language employed by Congress. *Sports Graphics, Inc. v. United States*, 806 F.Supp. 268, 270 (CIT 1992). Furthermore, "[t]he master rule in the construction of statutes is to so interpret them as to carry out the legislative intent." *United States v. Clay Adams Co.*, 20 CCPA 285, 288 (1932). These fundamental precepts govern the assessment of the parties' contentions in the instant case.

Plaintiff maintains that schedule 3, headnotes 2(a)(vi) and 5 should apply to its imported merchandise. These headnotes collectively exclude certain "articles" made of fabric from the textile provisions of schedule 3. *United States v. Elbe Prods. Corp.*, 68 CCPA 72, 74, C.A.D. 1267, 655 F.2d 1107, 1109 (1981). As noted above, headnote 2(a)(vi) provides that "[f]or purposes of the tariff schedules, ... the term 'textile materials' means ... [,] except as provided by headnote 5, articles produced from any of the foregoing products." Headnote 5 states the following:

For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any *article* which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded *not as a textile material* but as being wholly of rubber or plastics to the extent that ... the

nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric. (Emphasis added). The foregoing language demonstrates that the purpose of headnote 5 is to identify a class of merchandise that Congress has determined lies outside the scope of schedule 3, notwithstanding the fact that the merchandise may otherwise have some schedule 3 characteristics. *See Uniroyal, Inc. v. United States*, 9 CIT 449, 452, 1985 WL 25777 (1985). The crux of plaintiff's first argument is that the polyethylene sheeting falls within the class defined by headnote 5.

The class of merchandise to which headnote 5 applies has precise characteristics. To come under this headnote merchandise must have the following attributes: (1) laminated fabric; (2) nontransparent plastic that comprises the merchandise's outer surface; and, (3) an underlying fabric described in schedule 3, part 4, subpart C.

None of the evidence produced at trial disputed whether the polyethylene sheeting met the headnote's three requirements. First, witnesses for both plaintiff and defendant testified that the imported product consists, in part, of a laminated fabric. Second, all five samples of plaintiff's sheeting introduced as exhibits and testimony adduced from plaintiff's and defendant's witnesses incontrovertibly showed that the merchandise has a nontransparent plastic surface. Third, the notion that the polyethylene fabric substrate is a fabric described in schedule 3, part 4, subpart C was also uncontradicted at trial. In fact, the classification that Customs originally gave and that defendant urges, item 355.82, is a schedule 3, part 4, subpart C item. Therefore, because plaintiff has shown that the polyethylene sheeting is a laminated fabric, has an outer surface consisting of nontran-

sparent plastic, and contains a fabric that falls under the required tariff schedule subpart, the Court finds that schedule 3, headnotes 2(a)(vi) and 5 apply to the sheeting.

Defendant contends that the two headnotes are inapplicable because the polyethylene sheeting is not an "article" within the headnotes' meaning. According to defendant, only finished products can be "articles" and because plaintiff's merchandise is an intermediate product it is outside the scope of the headnotes. Although our predecessor court adopted this position in *Marshall Co. v. United States*, 334 F.Supp. 643 (1971), subsequent decisions by the Court of Customs and Patent Appeals rejected such an interpretation. In *Elbe Prods. Corp.* and *United States v. Canadian Vinyl Indus., Inc.*, the Court of Customs and Patent Appeals expressly found that the term "article" comprises *both* intermediate and finished products. *Elbe Prods. Corp.*, 68 CCPA at 75–76, C.A.D. 1267, 655 F.2d at 1110; *United States v. Canadian Vinyl Indus., Inc.*, 64 CCPA 97, 105–06, C.A.D. 1189, 555 F.2d 806, 811 (1977). This Court follows these latter cases rather than adopt the narrow interpretation urged by defendant.[2] Accordingly, the Court holds that headnotes 2(a)(iv) and 5 apply to the subject merchandise and that the merchandise is per se excluded from classification under any schedule 3 item. *See Elbe Prods. Corp.*, 68 CCPA at 76, C.A.D. 1267, 655 F.2d at 1110 (Coated, filled or laminated fabrics meeting the "recited condition" contained in headnote 5 are per se excluded from schedule 3.). As a result, the Court finds that Customs' classification under item 355.82 is incorrect.

## C. *Proper Classification*

The second inquiry under *Jarvis Clark* directs the Court to assess whether plain-

---

**2.** Notwithstanding the fact that this Court follows the Court of Customs and Patent Appeals' approach, the Court notes that the record shows that, as imported, plaintiff's merchandise is essentially a final product. Cutting the sheeting to size or adding grommets or mesh does not alter the fact that plaintiff imports its merchandise in a condition that is essentially ready for distribution and use. The precedent on which the Court relies, however, obviates the need for

a more detailed analysis and the Court declines to conduct any further inquiry on the question of whether the sheeting is an intermediate or final product. Moreover, because the merchandise's condition at the time of entry into the United States determines its classification, changes in the merchandise after it enters the stream of commerce are irrelevant. *See* Ruth F. Sturm, Customs Law and Administration, § 54.1, at 3 (3d ed.1991) (citations omitted).

tiff's proposed classification is correct. 733 F.2d at 878. In its papers and at trial plaintiff contends that item 771.43 is the proper classification for the polyethylene sheeting. This item applies to "film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing *wholly or almost wholly of rubber or plastics:* not of cellulosic plastics materials: Film, strips, and sheets, all the foregoing which are flexible: other: other." (Emphasis added). When read in conjunction with the TSUS's General Headnotes and Rules of Interpretation, item 771.43 limits itself to articles composed completely of rubber or plastics or whose "essential character" is rubber or plastics.

As with the term "article" discussed above, "essential character" is a term of art within the TSUS. The term arises from General Headnotes and Rules of Interpretation 9(f)(iii), TSUS, and states the following in pertinent part:

> For the purposes of the schedules, unless the context otherwise requires[,] ... the term[ ] ... "almost wholly of," ... when used between the description of an article and a material, ... means that the *essential character* of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present.

(Emphasis added). This General Rule explains that a particular TSUS item may apply to a product even though materials other than that covered by the TSUS item substantially contribute to the product. *See Canadian Vinyl Indus. v. United States*, 408 F.Supp. 1377, 1378 (1976) ("General headnote 9(f)(iii) acknowledges the possibility that significant quantities of some other materials may be present and implicitly recognizes that those other materials will impart something to the character of the article."). In sum, an article's "essential character" is "that which is indispensable to the structure, core or condition of the article, i.e., what it is." *United China & Glass Co. v. United States*, 293 F.Supp. 734, 737 (1968) (citation omitted).

In the instant case, both parties comprehensively addressed the "essential character" question. Most of the testimony adduced at trial focused on defining the merchandise's "essential character." Plaintiff's witnesses indicated that the sheeting's plastic film laminate accounts for the product's "essential character" because this component contributes the sheeting's most outstanding and distinctive qualities. They singled out several functions performed by the film alone, such as waterproofing, inhibiting UV rays, mildew and algae, preventing evaporation, and protecting against dust. In addition, the witnesses indicated that the properties contributed by the plastic component explain why consumers purchase the polyethylene sheeting.

Defendant, on the other hand, developed testimony indicating that the fabric component imparts the "essential character" to the sheeting. Defendant's witnesses testified that the tear strength, burst strength, tensile strength, and elasticity or elongation derived from the textile component account for the sheeting's distinctive and outstanding qualities. Moreover, on cross-examination defendant elicited testimony from plaintiff's witnesses stating that the fabric substrate was integral to the film's support and protection. This testimony indicated that the substrate's various strengths protected the film and the sheeting itself against impact. Because item 355.82 applies to merchandise whose "essential character" is textile fabric, defendant urges the Court to uphold Customs' classification of the sheeting under this item.

This Court's earlier finding that schedule 3, headnotes 2(a)(vi) and 5 apply to this case guides the Court's "essential character" inquiry. As stated at the outset of this discussion, the goal in analyzing the proposed TSUS provisions is to give effect to Congress's intent in implementing the provisions. *See Clay Adams Co.*, 20 CCPA at 288. This goal requires the Court to read the pertinent provisions in tandem and not to consider some provisions for one purpose and not for another. Therefore,

the Court must consider how headnotes 2(a)(vi) and 5 affect its "essential character" inquiry. This Court holds that these headnotes limit the need to undertake an "essential character" analysis and that the sheeting's proper classification is under item 771.43.

By its own terms, headnote 5 precludes the need for a fact-intensive "essential character" analysis. Once an article satisfies the headnote's prerequisites, the headnote directs that "the fabric shall be regarded not as a textile material but as being *wholly of rubber or plastics....*" (Emphasis added). General Headnotes and Rules of Interpretation 9(f)(iii), on the other hand, indicates that where an article contains several components and no single component appears to be dominant, classification of the article requires a determination of the article's "essential character." Ascertaining "essential character" involves an extensive factual examination of the article's composition. Headnote 5, however, creates an exception to General Rule 9(f)(iii) by treating articles which meet the headnote's criteria as though they were "composed completely" of a particular material when in fact they may have more than one significant component. Consequently, because headnote 5 specifically applies to the facts of this case, this Court holds that the more generalized "essential character" approach contained in General Rule 9(f)(iii) is inapplicable.

■ The Court now turns to plaintiff's proposed classification under item 771.43. As indicated above, this item applies, in relevant part, to "film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing *wholly or almost wholly of rubber or plastics.*" (Emphasis added). By its own terms, the item includes, among other articles, "sheets ... wholly ... of ... plastics." The Court must assess plaintiff's proposed classification in light of its earlier finding that headnote 5 applies to the polyethylene sheeting.

On its face, headnote 5 lends ample support to classifying the sheeting under item 771.43. As discussed above, headnote 5 states the following in pertinent part:

> For the purposes of part[ ] ... 12 of schedule 7, ... any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent ... plastics (which fabric is provided for in part 4C of [ ] schedule [3]), the fabric shall be regarded *not* as a textile material but as being wholly of ... plastics....

(Emphasis added). Item 771.43 resides in schedule 7, part 12. As just indicated, headnote 5 explicitly refers to schedule 7, part 12. Headnote 5 does not affect items within schedule 3, part 4, subpart C, the subpart containing item 355.82; the headnote only references fabrics provided for in schedule 3, part 4, subpart C. Headnote 5's language makes it abundantly clear that where an article has the characteristics contained in headnote 5 and is described by an item within schedule 7, part 12, Congress intended that the article be classified as "wholly of plastics." Consequently, because item 771.43 is found under schedule 7, part 12 and because headnote 5 describes all of the sheeting's characteristics (i.e. laminated fabric, an outer surface comprised of nontransparent plastic, and an underlying fabric described in schedule 3, part 4, subpart C), this Court holds that item 771.43 is the proper classification.

Moreover, the application of item 771.43 further reinforces the fact that Customs' classification under item 355.82 is incorrect. Classification under item 771.43 triggers the operation of schedule 3, part 4, subpart C, headnote 1(vii). This headnote states that "[t]he provisions of this subpart do not cover other articles specially provided for in schedule 7 or elsewhere." On its face, headnote 1(vii) renders schedule 3, part 4, subpart C items and schedule 7 items mutually exclusive; that is, where classification is proper under a non-schedule 3 item, the headnote prohibits classification under schedule 3, part 4, subpart C. Therefore, because the Court has found that item 771.43 provides for the article in question— a schedule 7 item—and because Custom's classification under item 355.82 is within the subpart covered by headnote 1(vii)—

schedule 3, part 4, subpart C, the Court holds that the headnote precludes the application of item 355.82 to the merchandise at issue.

## IV. CONCLUSION

This Court holds that plaintiff has overcome the presumption of correctness created by 28 U.S.C. § 2639(a)(1) and that Customs incorrectly classified the merchandise at issue under item 355.82, TSUS. This Court also holds that the correct classification is as "film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics" under item 771.43 or 771.42, TSUS (depending on date of entry), as plaintiff maintains. Judgment will issue accordingly.

## ORDER

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, therefore, in conformity with said decision it is hereby

ORDERED, ADJUDGED AND DE-CREED that the United States Customs Service classification of the subject merchandise under item 355.82, TSUS, is reversed, and it further

ORDERED, ADJUDGED AND DE-CREED that the United States Customs Service shall reliquidate the subject merchandise under item 771.42 or 771.43, TSUS (depending on date of entry), and shall refund all excess duties with interest as provided by law.