**GENENDER WHOLESALE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 76–5–01171.**

United States Court of International Trade.

May 7, 1981.

Barnes, Richardson & Colburn, Chicago, Ill. (Steven P. Sonnenberg and Mark S. Zolno, Chicago, Ill., at the trial and on the brief), for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Sidney N. Weiss, New York City, at the trial and on the brief), for defendant.

BOE, Judge:

The merchandise constituting the subject matter of the within cause of action consists of watch cases imported from Hong Kong and entered at the port of Chicago, Illinois in September 1974.

Upon liquidation the imported merchandise was classified as watch cases "containing gold" and assessed with duty under item 720.24, TSUS, providing in pertinent part:

Schedule 7, Part 2, Subpart E

Watch cases and parts thereof:
  Not wholly and not almost wholly of gold or
    platinum or of both gold and platinum:

Wholly or in part of silver; or containing gold or platinum; or set, or prepared to be set, with precious or semiprecious stones or with imitation gemstones:

| | | |
|---|---|---|
| 720.24 | Cases ........................ | 20¢ each + 15% ad val. |

The plaintiff, protesting the foregoing classification, claims the subject merchandise to be properly classified under item 720.28, TSUS:

Other:

| | | |
|---|---|---|
| 720.28 | Cases ................... ....... | 5¢ each + 10% ad val. |

General Headnote 9(f)(iv), which plaintiff contends precludes the classification of the subject merchandise within the purview of the liquidated classification, provides in pertinent part:

> 9. *Definitions.* For the purposes of the schedules, unless the context otherwise requires—
>
>    *    *    *    *    *    *
>
> (f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e. g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
>
>    *    *    *    *    *    *
>
> (iv) "in part of" or "containing" mean that the article contains a significant quantity of the named material.

With respect to subparagraphs (ii) and (iv) of paragraph 9(f), General Headnote 9 further provides:

> With regard to the application of the quantitative concepts specified in subparagraphs (ii) and (iv) above, it is intended that the *de minimis* rule apply.

■ It is undisputed from the evidence adduced that the imported watch cases contain gold which had been intentionally applied to the merchandise by an electroplating process. The surface coating of the gold on the watch case is of a thickness of one and one-half to two millionths of an inch, and of a degree of purity of 22 to 24 karats. The yellow color of the watch case is obtained only by the application of the gold by means of the process afore-referred to. The value of the gold applied to the surface of the watch case, computed on the basis of the price of gold at the time of

importation, is one cent. The total cost of the gold together with the application process approximates five to seven cents—about 25% to 30% of the total cost of a watch case.

In contending that the *de minimis* provision contained in General Headnote 9 precludes the classification of the subject merchandise as articles "containing gold," the plaintiff relies on the decisions of our appellate court in *Cavalier Shipping Co. v. United States*, 60 CCPA 152, 478 F.2d 1256 (1973) and *United States v. Aceto Chemical Co.*, 64 CCPA 78, 553 F.2d 685 (1977). In so doing, the plaintiff urges that the primary function of a watch case is to house and protect that which under schedule 7, part 2, subpart E, TSUS, is termed and referred to as a movement. Thus, the plaintiff contends that the admitted presence of gold on the subject cases serves only to provide a yellow color thereto and, in so doing, is not present in such significant amount sufficient to satisfy the requirements of the quantitative-functional test enunciated by our appellate court.

The defendant, urging that the instant action and the subject merchandise therein fall within the rationale of *Varsity Watch Co. v. United States*, 34 CCPA 155, C.A.D. 359 (1947), contends that the gold contained upon the surface of the watch case part known as the bezel, is of a "significant quantity," causing the *de minimis* provision to be inapplicable.

In the *Varsity Watch* case, *supra*, despite the absence of the formalized statutory presence of a general headnote or an interpretative rule referring thereto, our appellate court recognized the existence of the *de minimis* principle in general. Notwithstanding such recognition, however, the court determined that with respect to all metallic watch cases in which gold was intentionally applied, enhancing the value of the case and serving the commercial purposes of providing a yellow color and increasing its saleability, paragraph 367(f) of the Tariff Act of 1930 required the classification thereof as being "in part of gold," irrespective of the minute quantity of this precious metal therein.

In the enactment of the Tariff Schedules of the United States, the provisions of paragraph 367(f) of the Tariff Act of 1930 in substantive meaning have been retained by the inclusion of the item descriptions of watch cases as "containing gold" and "other," respectively. Noteworthy is the inclusion of General Headnote 9(f)(iv) in the tariff schedules specifically providing that the terms "in part of" or "containing" mean "that the article contains a significant quantity of the named material." Of further import is the statement contained in the Tariff Classification Study (Volume I), Submitting Report, November 15, 1960, at 14, wherein the intended application of the aforecited general headnote is made clear:

> In the proposed revised schedules, provisions based on the 'in part of' concept have been kept to a minimum, and where it is used the intention is that the component material be present in commercially significant amount.

In view of the foregoing it is proper that the court direct its attention to the evidence adduced herein in order to determine whether the gold component contained in the subject watch cases is present in a "commercially significant amount." Quantitatively, in an isolated amount the gold acknowledged to be contained in the subject watch cases might not be deemed to be a significant amount. However, in considering this quantity of gold as it relates to the subject merchandise, the court is of the opinion that the gold component, indeed, is present in a "commercially significant amount." The conclusion to be drawn from the unrebutted evidence would cause a contrary determination to be untenable.

The construction of the subject watch cases consists of a base metal of brass, covered by a coating of nickel which, as the result of the electroplating process, in turn, is covered by a surface layer of gold of a thickness of one and one-half to two millionths of an inch. As the evidence discloses, the presence of the gold inhibits tarnish and rust and serves as the only commercial means by which the desired yellow color can be provided to the watch case. Notwith-

standing the complete watch as admitted in evidence, plaintiff's Exhibits 3 and 4, might be deemed a novelty item, it must be borne in mind that the subject merchandise presently before this court consists solely of the watch case.[1] It is with respect to this subject merchandise that the testimony appears undisputed that the yellow color of the watch case, provided by the application of gold, causes the same to possess a quality of richness, thereby enhancing its saleability. The significance of the quantity of gold in the subject merchandise is further illustrated by the testimony of defendant's witness, Mr. Weisberg, who explained that the application of a lesser quantity over the brass metal would reflect a "pink gold" color whereas the application of such a lesser quantity over the nickel would reflect a "whitish gold" color. In short, the quantity of gold existing as a surface on the subject merchandise fulfills a specific purpose—to provide the commercially desired yellow color of gold.

The evidence further reveals that at the time of importation of the subject merchandise, the market value of two milligrams of gold, the acknowledged quantity contained in each watch case, was one cent. In applying the cost standard recognized in the United States in the costume jewelry industry, it appears that the electroplating process used in the application of the gold was five cents. Plaintiff's evidence discloses that the subject watch cases were imported at a cost of 25 cents each. With the cost of the gold component and the application thereof on the subject watch cases thus representing 25% to 30% of the value of the imported article, the presence of a "commercially significant amount" of the gold component on the subject merchandise would appear to be clearly evidenced.

■ As stated by Chief Judge Markey in *Cavalier Shipping Co., supra*, despite the fact that General Headnote 9(f)(iv) uses the term "significant quantity" by way of defi-

nition, the interpretation thereof "remains open." Accordingly, in the absence of further aid from statutory provisions or explanations, the quantitative determination of the amount of a component necessary to be embraced within the definitive meaning of the term "significant" necessarily must be recognized to depend upon the factual evidence adduced in each respective case. The defendant's witness, Mr. Weisberg, in his testimony has provided a standard upon which a determination with respect to the "commercially significant amount" of the gold component in the subject merchandise can be measured. It has been established without dispute that in the costume jewelry industry, the application of gold upon the jewelry by means of an electroplating process is of a thickness of one to three-millionths of an inch. The similarity with respect to the quantity of gold as well as with respect to the manner of its application existing between the commercial costume jewelry industry and the subject merchandise satisfies this court that the component, gold, is present in the subject watch cases in a recognized commercially significant amount within the United States.

It appearing to the court from all of the evidence presented herein that the plaintiff has failed in its dual burden to prove that the liquidated classification of the subject merchandise is in error and to establish the correctness of its claimed classification, the above-entitled action must be dismissed and the liquidated classification of the subject merchandise under item 720.24, TSUS, accordingly, affirmed.

Let judgment be entered accordingly.

---

1. As evidenced by schedule 7, part 2, subpart E, the parts of a watch include the case, the movement and the dial, all of which are subject to specific classification under the provisions of the aforedescribed tariff schedules.