(Appeal No. 81–28)

C. Itoh & Co. America, Inc. *v.* The United States

(1678 F.2d 218)

---

United States Court of Customs and Patent Appeals, April 29, 1982,

*James S. O'Kelly,* of Barnes, Richardson and Colburn, New York, New York, attorney for appellant.

*J. Paul McGrath,* Asst. Atty. General, *David M. Cohen,* Director, *Joseph I. Lieb-man,* Attorney-in-Charge, and *John J. Mahon,* of New York, New York, attorneys for appellee.

[Oral argument on March 8, 1982 by *James S. O'Kelly* for appellant and *John J. Mahon* for appellee.]

Before MARKEY, *Chief Judge,* RICH, BALDWIN, MILLER, and NIES, *Associate Judges.*

MILLER, *Judge.*

█ This appeal is from the judgment of the United States Court of International Trade, 1 CIT 223, 520 F. Supp. 273 (1981), holding that artificial suede imported from Japan was properly classified under item 355.25, Tariff Schedules of the United States ("TSUS") as nonwoven fabric of textile materials, instead of under appellant's claimed classifications, item 774.60, TSUS, as articles not specially provided for, of rubber or plastics, or item 359.60, TSUS, as textile fabrics, including laminated fabrics, not specially provided for. We affirm.

## BACKGROUND

The merchandise involved was manufactured in Japan by Toray Industries, Inc. and was entered on November 7, 1975, at the port of Wilmington, Delaware. The merchandise is known as "Ecsaine" or "Ultrasuede." It is appellant's position that, in accordance with *Definition* 9(f)(i) and *General interpretative rule* 10(f), TSUS,[1] the imported merchandise is not in chief value "of" textile materials, as required under item 355.25, TSUS,[2] but, rather, is in chief value "of" plastics, and is properly classifiable under item 774.60, TSUS.[3]

---

[1] These provisions read:
  9. *Definitions.*—For the purposes of the schedules, unless the context otherwise requires—
      *      *      *      *      *      *      *
      (f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
          (i) "of" means that the article is wholly or in chief value of the named material;
          *      *      *      *      *      *      *
  10. *General interpretative rule.*—For the purposes of these schedules—
      *      *      *      *      *      *      *
      (f) an article is in chief value of a material if such material exceeds in value each other single component material of the article;
      *      *      *      *      *      *      *

[2] The customs service classified the merchandise as:
      Webs, wadding, batting, and nonwoven fabrics, including felts and bonded fabrics, and articles not specifically provided for of any one or combination of these products, all the foregoing, of textile materials, whether or not coated or filled:
355.25          Of manmade fibers......................................................................................................... 12¢ per lb.
                                                                                                                                +15% ad val.
      *      *      *      *      *      *      *

[3] Appellant principally argues that the proper classification is:
      Articles not specially provided for, of rubber or plastics:
774.60          Other......................................................................................................................... 8.5% ad val.

In support of this position, appellant introduced the testimony of Mr. Ijiri, an employee of the manufacturer of Ecsaine responsible for control of the production costs thereof. Through an interpreter, Mr. Ijiri testified that Ecsaine is produced by a process which includes the following steps:

I. Very fine polyester fibers (0.1 denier) and polystyrene plastic are coextruded to form larger (3.5 denier) "bundles" (which appellant concedes are fibers) 50 mm in length comprising several polyester fibers encased in a polystyrene fiber. (Denier is the weight in grams of a filament 9000 meters long.) These composite fibers are carded and needle punched to form an entangled fiber sheet.

II. The entangled sheet is dipped in a plastic resin solution.

III. The polystyrene coating is removed from the polyester fibers by means of a solvent, leaving a sheet comprising plastic resin and polyester fibers.

IV. A polyurethane solution is made by mixing polyurethane, chemicals, and solvent.

V. The sheet of step III is impregnated with the polyurethane solution of step IV.

VI. The polyurethane solvent is recovered and the plastic resin is removed, leaving a sheet of polyester fiber and polyurethane plastic.

VII. The sheet is split horizontally and buffed to raise the nap.

VIII. The split sheet is dyed.

Mr. Ijiri also testified regarding the production costs associated with each step, broken down in terms of materials, overhead, and labor. These figures are confidential by order of the trial court.

*The Decision Below*

Regarding appellant's principal argument, that Ecsaine is in chief value of plastics and not of textile materials, the trial court held against appellant:

> We find that the costs of all the steps up to the joinder of the polyurethane with the fiber sheet, exclusive of the cost of the polyurethane, are attributable to the fiber component, and that these costs exceed the cost of the polyurethane. This is especially true since the cost breakdown provided by plaintiff for the polyurethane included the cost of chemicals and solvents, which were not identified in the testimony. We cannot accede to plaintiff's claim that the cost of the resin should be attributed to the plastics material since the resin was not identified by the witness, despite the fact that he was specifically asked what resin is used in the manufacture of the merchandise. In view of these considerations and of the fact that the witness did not possess personal knowledge of the costs of some of the components as compared with others, plaintiff has not proved that the cost of the plastics material exceeds that of the fiber

component, or for that matter, that of any of the chemicals or solvents that are used in the manufacturing process. [Footnote omitted.]

1 CIT at 229, 520 F. Supp. at 277.

## OPINION

*Issues*

The principal issue before us is whether appellant sustained its burden to overturn the government's presumptively correct classification. A threshold question is the weight to be accorded the testimony of appellant's sole witness.

■ Contrary to the arguments of the parties, the standard for reviewing *factual* findings of the Court of International Trade is not whether they are "contrary to the weight of the evidence." Rather, as provided in 28 U.S.C. 2601(c), "Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the Court of International Trade to judge the credibility of the witnesses." The government argues that the trial court found that the testimony of the witness lacked credibility and points to his failure to recall the cost of the bulk polyurethane and the cost of the fiber per kilogram from which the 1975 cost figures per meter offered by the witness were derived. With respect to that testimony, the Court of International Trade said:

> [I]t is not clear to this court that the cost of the plastics components submitted by plaintiff (plaintiff's exhibit No. 5) is substantiated by the testimony at trial. Mr. Ijiri testified that the polyurethane to which the fiber sheet was joined constituted approximately 12 to 14 percent of the polyurethane mixture in which the fiber sheet is dipped. The other 86 or 88 percent consists of an unidentified solvent and other unidentified chemicals. It is unclear whether the cost figures submitted by plaintiff reflect this percentage in the allocations for raw materials and chemicals made at the polyurethane/sheet joinder stage, and the witness testified that he could not recall the cost of polyurethane in 1975, the year in which the merchandise was imported, or the cost of the solvent. No other evidence was adduced with respect to the correctness of the figures that were submitted in plaintiff's exhibit No. 5.

> \*     \*     \*     \*     \*     \*     \*

> Even if this court were to find that the merchandise is not a fabric for tariff schedule purposes, the presumptively correct classification by Customs should stand. The plaintiff is required to prove, in order to prevail, that the cost of the plastics exceeds that of any other component in the merchandise. The testimony of the witness, Mr. Ijiri, with respect to the costs of the various components was less than clear, even allowing for the difficulties of translating both questions and answers from the Japanese language \* \* \*. [H]e was unfamiliar with or

could not remember how the price of the fiber component of the "Ecsaine" was arrived at.

1 CIT at 228, 520 F. Supp. at 274–75, 277.

█ As pointed out above, appellant, before the Court of International Trade, relied on a single witness in an attempt to prove the production costs of Ecsaine. The court held that plaintiff did not carry its burden of proof based on its finding that the weight of the testimony of the witness was insufficient to substantiate the cost figures set forth in plantiff's exhibit 5. Unlike courts of appeals, the trial judge has a unique opportunity to evaluate the testimony of a witness, and we are not persuaded that the trial court's finding was clearly erroneous.[4]

Because appellant has failed to sustain its burden to overturn the government's presumptively correct classification, the judgment of the Court of International Trade is *affirmed.*

No. 81–31

Texas Instruments, Inc. *v.* The United States

(681 F.2d 778)

---

[4] Because of our resolution of the threshold question, it is unnecessary to reach plaintiff's arguments regarding the trial court's allocation of the various costs and the claimed alternative classification since these arguments are dependent of Mr. Ijiri's testimony.