UNIROYAL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 78–8–01406

(Decided September 13, 1985)

*Barnes, Richardson & Colburn (Andrew P. Vance* and *Michael A. Johnson)* for plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, *Susan Handler-Menahem,* Civil Division, United States Department of Justice, for defendant.

RESTANI, *Judge:* This case concerns the proper tariff classification of conduit hose imported from Canada. Although this action involves three styles of hose, the basic configuration of all styles are identical and thus all styles are classifiable together either under the assessed or claimed tariff provision.[1] This matter is before the court on plaintiff's motion and defendant's cross-motion for summary judgment.

The subject merchandise was imported into the United States through the port of Champlain-Rouses Point, New York, where it was entered on several occasions between November 12, 1973, and September 12, 1977. The hose was manufactured in Canada by Uniroyal, Ltd. Plaintiff Uniroyal, Inc. is either the consignee or the importer of record. The hose at issue has an exterior surface of either natural or synthetic rubber. Similarly, the surface surrounding the aperture, that is, "the tube," also consists of rubber. In all cases, however, the tube is reinforced with a fabric wrapping to prevent bulging during use.[2]

Based solely on the presence of the fabric wrapping, the United States Customs Service (Customs) classified the hose under item

---

[1] Specifically, the three styles of hose at issue here are Uniroyal catalog numbers H–3400 (water discharge hose), P–267 (dredging sleeves), and P–964 (acid suction hose).

[2] In style P–964 (acid suction hose) the fabric is reinforced with helical-wound wire reinforcement. The parties appear to agree that the wire is irrelevant to classification.

357.90 of the Tariff Schedules of the United States (TSUS)[3] as "Hose suitable for conducting gases or liquids, with or without attached fittings: Of vegetable fibers," and assessed duties at the rate of 9.7 per pound plus 7.5% *ad valorem.* Plaintiff claims that the hose is properly classifiable under item 772.65 as "Hose, pipe, and tubing, all the foregoing not specially provided for, of rubber, or plastics, suitable for conducting gases or liquids, with or without attached fittings" and dutiable at the rate of 4% *ad valorem.*

The issue presented in this case, therefore, is whether despite its fabric content, the hose should be deemed to be "of rubber" for tariff purposes.[4] In analyzing this case, in which classification is based on composition, it is useful to examine the process of manufacturing hose.[5]

The construction of hose is known as building.[6] In hose building, each component is constructed to the desired dimensions before the elements are combined. For large diameter hose, much of the building process is performed by hand, while for hose of smaller diameter, construction is performed by machine as well as by hand. In either case, the tube is manufactured and then placed on a length of rigid or flexible rod known as a mandrel where it remains until the finished product is created.[7]

After the tube is mounted on the mandrel the fabric reinforcement, known as the "carcass," is wrapped around the tube.[8] Before it is applied, however, the cloth is impregnated with rubber in a process known as "frictioning." Frictioning removes air, fills the interstices of the fabric, and provides an adhesive base for the tube, fabric, and cover layers. After frictioning, a thin layer of rubber, known as a "skim coating," is then added to the fabric. The skim coating completely covers the fabric and prevents the fabric from chaffing and degrading if it rubs between the tube and the outer surface of the hose. After the carcass is in place, the outer surface, the "cover," is wrapped over it. The inner surface of the cover directly contacts the skim coating of the carcass. The addition of the cover completes the building process.

Once built, the hose is vulcanized. Vulcanization is a process in which the hose is heated under pressure in the presence of a

---

[3] Although the entires involved in the subject protest occurred between 1973 and 1977, the relevant TSUS provisions remained unchanged throughout this period.

[4] Under general headnote 9(f)(i) of the TSUS, for purposes of items classified by composition, the word "of" means "wholly or in chief value of the named material." The court's use of the word "rubber" includes synthetic rubber.

[5] This process is described in the affidavit of plaintiff's engineer, Gordon Grant. The facts stated in the affidavit are not challenged by defendant.

[6] "Building operations, varying from simple to complex, are [also] required for products such as tires, shoes, fuel cells, press rolls, conveyor belts, and life rafts. These products may be built by combining stocks of different compositions or by combining rubber stocks with other construction materials such as textile cords, woven fabric or metal." 11 *McGraw-Hill Encyclopedia of Science & Technology* 767 (5th ed. 1982).

[7] In style number P–964 (acid suction hose) the tube consists of the synthetic rubber compound Hypalon. In style number H–3400 (water discharge hose) the tube is formed from the synthetic compound styrene butadiene rubber while in style P–267 (dredging sleeves) the tube is made of abrasion-resistant rubber.

[8] The fabric carcass can consist of either natural or synthetic fibers depending upon the respective specification. For instance, the carcass of style number P–267 (dredging sleeves) is made of multiple plies of synthetic fabric.

catalyst.[9] During vulcanization all rubber components join to one another in a process of lamination. Each of the rubber layers are thus irreversibly combined in such a manner that they cannot be peeled apart.

Plaintiff bases its claim on headnote 5 of schedule 3, "Textile Fibers and Textile Products," of the TSUS which states:

> For the purposes of parts 5, 6, and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.[10]

Plaintiff argues that the cover of the hose as laminated to the fabric's skim coating places the hose at issue within the purview of headnote 5, thereby permitting the hose to be classified as rubber hose under schedule 7, part 12, "Rubber and Plastics Products."

Defendant claims that headnote 5 is inapplicable. To defendant, the purview of headnote 5 is limited by its own terms to specifically enumerated TSUS sections (e.g., schedule 3, parts 5, 6, and 7 and schedule 7, parts 1, 4, and 12). Since Customs' classification, that is, hose of "vegetable fiber" is in part 4 of schedule 3 and is not within the specifically enumerated areas of the TSUS, the government argues that headnote 5 is inapplicable. There is a logical flaw in defendant's approach. Defendant would first choose a specific item of the TSUS and then look for applicable headnotes. In this case the headnote determines whether or not a specific item of the TSUS will fit the merchandise. Defendant has proceeded erroneously in choosing a specific TSUS item in the first instance, thereby causing the headnote to appear inapplicable, when in fact it is the key to classification here.

Further, defendant's assertion that headnote 4(b) of schedule 3 governs this case is not persuasive. Defendant incorrectly interprets the provision as applying to a determination of whether the component of chief value is fiber or rubber.[11] Headnote 4(b), however, directs that in determining the component *fiber* in chief value the coating, filling or laminating substance is to be disregarded. The

---

[9] "Vulcanization is the process that converts the essentially plastic, raw rubber mixture to an elastic state. It is normally accomplished by applying heat for a specified time at the desired level." 11 *McGraw-Hill Encyclopedia of Science and Technology* 767 (5th ed. 1982). The process is accomplished through "[a] physicochemical change resulting from cross-linking of the unsaturated hydrocarbon chain of polyisoprene (rubber) with sulfur * * *." *Hawley's Condensed Chemical Dictionary* 1091 (10th ed. 1981).

[10] Headnote 2(a) to schedule 3 of the TSUS is consistent in that it indicates that articles made from the coated or laminated fabrics described in headnote 5 are not textile materials.

[11] Headnote 4(b) of schedule 3 provides:

In determining the component fibers of chief value in coated or filled, or laminated, fabrics and articles wholly or in part thereof, the coating or filling, or the nontextile laminating substances, shall be disregarded in the absence of context to the contrary.

headnote thus refers only to the situation in which a choice must be made among several fibers. "The headnote is no indication that [coating, filling, or laminating substances] should be disregarded for other purposes." *Marshall Co.* v. *United States,* 67 Cust. Ct. 316, 323, C.D. 4291 (1971) (citing *Briarcliff Clothes, Ltd.* v. *United States,* 66 Cust. Ct. 228, C.D. 4194 (1971)). Despite such precedent, defendant claims that headnote 4(b) may be interpreted expansively, citing *C. Itoh & Co. America* v. *United States,* 1 CIT 223, 230, 520 F. Supp. 273, 278 (1981), *aff'd,* 69 CCPA 147, 678 F. 2d 218 (1982). In that case, the trial court made reference to headnote 4(b) in deciding to disregard rubber coating in classifying a material called Ultrasuede. Headnote 4(b) was used, however, only with reference to classification within schedule 3. This is consistent with *Marshall* and *Briarcliff.*

Defendant also argues that the cotton carcass is not coated or laminated by the rubber cover because the fabric itself is coated with rubber before the cover is wrapped around the carcass. Defendant claims that the rubber cover which forms the outer surface of the hose does not coat the fabric but instead coats the fabric's previous rubber layer and is, therefore, not in accordance with headnote 5. Through the process of vulcanization, however, the rubber layers between the tube and carcass are united. In final form, the carcass is covered by a single layer of nontransparent rubber.[12]

Finally, the government argues that headnote 5 does not apply because the hose is not an "article" at the time the component material of chief value must be determined. That argument disregards the purpose of headnote 5. Headnote 5 allows the fabric content of certain articles to be ignored. Accordingly, since the entire hose is considered to be made of rubber under headnote 5, no chief value ascertainment need be made, and the point in assembly at which chief value is determined is irrelevant.

Plaintiff's claimed classification is also supported by legislative history. Congress apparently intended that an article containing fabric, but with the essential characteristics of rubber or plastic, be treated as being rubber or plastic. *See* S. Rep. No. 530, 89th Cong., 1st Sess. 26, *reprinted in* 1965 U.S. Code Cong. & Ad. News 3416, 3440; H.R. Rep. No. 342, 89th Cong., 1st Sess. 10–13 (1965). Specifically, the reports note that if the outer surface of the article is nontransparent rubber, the article will be treated as one made of rubber. The court has examined the sample articles in this case. Except for certain dissection which was performed for litigation purposes, the fabric would not be apparent upon inspection inasmuch as the surface of the hose is covered by nontransparent rubber. Essentially, the product at issue is rubber hose.

---

[12] While not dispositive, it is interesting to note that imported Canadian hose of manufacture similar to the merchandise here and containing a fabric reinforcement layer was the subject of *John V. Carr & Son, Inc.* v. *United States,* 76 Cust. Ct. 162, C.D. 4652, 414 F. Supp. 620 (1976). The issue in the *Carr* case concerned whether the imported hose should have received duty free treatment under item 772.66 of the TSUS. Upon entry, Customs had classified the hose under item 772.65. Despite the reinforcing fabric, Customs made no use of item 357.90.

Accordingly, plaintiff has overcome the presumption of correctness in defendant's favor. *See Jarvis Clark Co.* v. *United States,* 733 F. 2d 873, 876, *reh'g denied,* 739 F. 2d 628 (Fed. Cir. 1984). Plaintiff's motion for summary judgment is granted and defendant's cross-motion is denied. Customs is directed to reclassify the subject merchandise under item 772.65 and make refunds as appropriate, together with any interest as provided by law.